## EMILIO D'ASCANIO ET AL. *v.* TOYOTA INDUSTRIES CORPORATION ET AL.
### (AC 32361)

Lavine, Robinson and Bishop, Js.

Argued November 30, 2011—officially released February 7, 2012

*Jack G. Steigelfest,* for the appellants (plaintiffs).

*Paul D. Williams,* with whom were *Erick M. Sandler, James E. Hennessey* and *Patrick W. Schmidt,* pro hac vice, for the appellees (defendants).

### Opinion

BISHOP, J. In this product liability case, the plaintiffs, Emilio D'Ascanio and his wife, Maria D'Ascanio,[1] appeal

---

[1] Wiremold Company, the employer of Emilio D'Ascanio, filed an intervening complaint in this action but is not a party to this appeal. Therefore, we refer to Emilio D'Ascanio and Maria D'Ascanio as the plaintiffs in this opinion.

from the judgment of the trial court directing a verdict in favor of the defendants Toyota Material Handling USA, Inc., BT Prime Mover, Inc., and Summit Handling Systems, Inc.[2] On appeal, the plaintiffs contend that the court abused its discretion in striking testimony presented by their expert witness and precluding him from further testifying. That error, the plaintiffs claim, led the court to improperly direct a verdict in favor of the defendants. We agree with the plaintiffs and, accordingly, reverse the judgment of the trial court.

The following factual and procedural history is relevant to the issue on appeal. On June 14, 2005, the plaintiffs filed this action for damages incurred as a result of serious personal injuries sustained by Emilio D'Ascanio when he was operating an allegedly defective stand-up forklift designed, manufactured and distributed by the defendants. The plaintiffs alleged that defects in the forklift's steering system and its electronic control display proximately caused Emilio D'Ascanio's injuries. The court bifurcated the trial of the case, commencing with the presentation of evidence on the issue of liability.

The plaintiffs began their case by presenting the testimony of Daryl Ebersole, an engineer whom they had disclosed as their expert witness on the issue of whether the forklift in question was defective. After Ebersole had testified for the majority of the first day of trial, the plaintiffs sought to introduce into evidence a videotape that depicted a Toyota forklift with an electronic directional display system. The defendants objected to the admission of the videotape, and, in response, the court excused the jury to hear the arguments of counsel. The

---

[2] On January 24, 2006, the action was withdrawn as to the named defendant, Toyota Industries Corporation, and the defendants Toyota Equipment Manufacturing, Inc., and Toyota Industries North America, Inc. We therefore refer in this opinion to Toyota Material Handling USA, Inc., BT Prime Mover, Inc., and Summit Handling Systems, Inc., as the defendants.

defendants objected first on the basis that they were unaware of any videotape involving the exact model of forklift at issue in this case. In response, the plaintiffs' counsel asked Ebersole: "[H]ave you reviewed any video by any defendant in this action which portrays a directional control indicator as a [safety]-related device?" In an attempt to resolve the confusion of the court and the defendants' counsel as to what the videotape actually portrayed, the plaintiffs' counsel stated: "[M]y point being is it's the same person that puts the name on the truck—they're claiming that this directional control indicator on—same manufacturers is a safety-related device, and it does the same thing. It may look different but it does the same job." In an attempt to further lay a foundation for the exhibit, the plaintiffs' counsel asked Ebersole: "Have you seen a video by any defendant—by Toyota Material Handling that shows a directional control indicator on one of its vehicles and they've portrayed it as a safety device?" Ebersole indicated that he had seen such a videotape and that he had obtained it from "a Toyota Web site." He indicated that, although the directional control indicator and steering wheel might look different from those on the forklift at issue in the present case, they served the same safety purpose. The defendants' counsel then undertook his voir dire examination of Ebersole. He began by asking Ebersole: "[W]hat model Toyota is shown in the video?" Ebersole indicated that he believed it was a "six series" but that he was not certain exactly which model it was. The plaintiffs' counsel then asked Ebersole about the number of indicator lights on the model in the videotape, and a discussion ensued between counsel and the court as to the contrast between the number of indicator lights on that model and the model at issue in the case before the jury. The defendants' counsel voiced various further objections as to foundation, and, in response, the plaintiffs' counsel

offered the defendants' counsel the opportunity to view the videotape.[3] The defendants' counsel did not avail himself of that offer, and the court overruled the objection and admitted the videotape into evidence.

The videotape was first played for the jury and the court without commentary by Ebersole. The defendants' counsel did not raise any further objection to the videotape at that time. The videotape was then played a second time with Ebersole explaining what it depicted. The defendants' counsel objected only to any "editorial comment" by Ebersole. The court sustained the objection, and the remainder of the videotape was played for the jury again with Ebersole intermittently pausing the tape and explaining what it depicted. After the videotape had been played for the jury for the second time, the plaintiffs' counsel suggested that it be played one more time, a *third* time, straight through, without any narration or commentary. At that point, the defendants' counsel asked to approach the court. The court dismissed the jury for the weekend, and the defendants' counsel objected to the admission of the videotape.[4] The thrust of the defendants' objection was

[3] The plaintiffs' counsel indicated that the defendants' counsel had seen the videotape at an earlier deposition. The defendants' counsel did not dispute that statement and later indicated that he had "not recently . . . look[ed] at that video," and he thought that "it was something different than what was put up on the screen." It is not apparent from the record why the defendants' counsel did not take the opportunity to examine the videotape before allowing it to be shown to the jury.

[4] In objecting, the defendants' counsel acknowledged: "I will say up front, shame on me because I did not know . . . I did not recently—I—you know, recently look at that video. I thought it was something different than what was put up on the screen. And that's my fault. I should have had him put it up while we were doing the argument before." If the defendants' counsel had accepted the offer of the plaintiffs' counsel to preview the videotape that was being introduced as a full trial exhibit and that was going to be shown to the jury, or if the defendants' counsel had objected to the videotape upon seeing that it was not the same model that the jury was being asked to consider in this case and upon hearing Ebersole's acknowledgements and those of the plaintiff's counsel that the videotape did not portray the same model as the one involved in the accident, the prejudice, if any, that was caused by the admission of this exhibit, could have been avoided.

that the forklift portrayed in the videotape was not the same model that was involved in this case, and the two forklifts did not have the same displays. The court agreed that it, too, thought that the videotape was going to depict the same control system and indicated that it assumed that the jury shared that understanding. The court indicated that, when the jury reconvened, it would strike the exhibit and instruct the jury that it should be disregarded on the ground that it "is not a video which involves the model truck which is involved in this accident . . . ." Although the defendants' counsel accepted the court's ruling, further colloquy followed regarding the origin of the videotape, specifically regarding the date that the truck depicted in the videotape was manufactured. The plaintiffs' counsel indicated that he would attempt to obtain that information, and court adjourned for the weekend.

By the time court reconvened on the following Tuesday, May 25, 2010, the defendants had filed a motion for a mistrial on the ground that Ebersole and the plaintiffs' counsel intentionally misled the jury and the court in their efforts to admit the videotape into evidence.[5] The court questioned both the plaintiffs' counsel and Ebersole as to when they knew that the forklift in the videotape did not depict the model forklift that was the subject of the present litigation. The court also inquired as to the time of the making of the videotape. Following lengthy argument, the court ruled that both the videotape and Ebersole were "out of the case,"[6] striking the

[5] Specifically, the defendants filed a "Motion for a Mistrial and Monetary Sanctions or, in the Alternative, for an Order Barring and Striking Daryl Ebersole's Testimony, or, in the Alternative, a Curative Instruction Regarding Plaintiffs' Exhibit No. 69."

[6] Specifically, the court stated: "It is clear to the court from the additional evidence presented this morning that the presentation of exhibit number 69 last week involved one of two things, either deception or extreme sloppiness. If I had known then what I have since learned about this video and the testimony by Mr. Ebersole in support of this video, before it got shown, before Mr. Ebersole testified in support of it, it would not have been admitted into evidence. The reason it was not admitted into evidence—it was admitted

testimony that he had already given and precluding him from testifying further.

Subsequently, on May 28, 2010, the plaintiffs filed a motion for a continuance to allow them to disclose another liability expert. On that same date, the plaintiffs also filed a motion for a mistrial on the ground that they could no longer proceed with their cause of action without a liability expert. On June 1, 2010, the court issued a memorandum of decision denying the plaintiffs' motions.[7] In explaining its decision to strike the testimony, and to preclude further testimony of Ebersole, the court found that "Ebersole's behavior was motivated by a desire to hide critical facts about the evidence in question and was therefore deceptive" and

into evidence was because the court was not advised of some very important things.

"This video is out of the case. And given the gaps between what Mr. Ebersole said in testimony and what reality turns out to be, I have come to the unfortunate conclusion that Mr. Ebersole is out of the case. I'm striking his testimony; he is no longer involved in this case as an expert witness. And I will instruct the jury accordingly; that they are to act and think as if his testimony never happened.

"I'm not declaring a mistrial. I'm not imposing any financial sanctions at this time. But I am going to inform the jury, after I take a brief recess to consider my remarks carefully, that I—they're not going to be hearing anymore from Mr. Ebersole."

[7] In its memorandum of decision, the court, consistent with our review of the record of the proceedings, noted that the defendants initially objected to the introduction of the videotape "because the vehicle shown in the video was clearly not the model 6BRU18 reach truck at issue in this case. After argument outside the presence of the jury, the court found that the differences between vehicles went to weight instead of admissibility and overruled the defendants' objection." When the defendants' counsel later objected to the videotape, after it had already been shown to the jury *twice*, the argument was presented that the control systems on the two vehicles were not the same. From our reading of the record, it is apparent that neither the plaintiffs' counsel nor Ebersole claimed that the forklift depicted in the videotape or the electronic display system were identical in model or display format to the forklift at issue. The plaintiffs consistently argued that the probative value of the videotape was that it depicted Toyota as touting the electronic directional system as a safety device.

that such evidence "certainly would have been prejudicial to the defendants." The court concluded that a mistrial would not have been an appropriate remedy because it would "excuse . . . Ebersole from the consequences of his behavior. If this trial had to be put on all over again . . . Ebersole could conceivably be replaced, and the plaintiffs would get the equivalent of a judicial 'do-over.' " The court concluded that a curative instruction would "not do enough to undo the harm done here." Finally, the court concluded that: "When a witness whom the court has qualified as an expert demonstrates, as . . . Ebersole has, that his testimony cannot be relied on to be honest and complete, the testimony should not be permitted." The court found that the "available alternative relief was simply not severe enough, under the circumstances, to address this witness' behavior." The court summarily denied the plaintiffs' motion for a continuance of the trial to allow them to disclose another liability expert.

The plaintiffs continued with their case without a liability expert. At the end of the plaintiffs' case, the defendants moved for a directed verdict on the basis that the plaintiffs had not presented expert testimony that the forklift at issue was defective. The court agreed and granted the defendants' motion for a directed verdict.[8] This appeal followed.

---

[8] In granting the defendants' motion for a directed verdict, the court agreed with the defendants that the case was controlled by the modified consumer expectation test, rather than the traditional consumer expectation test, and, therefore, the plaintiffs required expert opinion evidence in order to meet their burden of proof regarding any claimed defect in the forklift. The plaintiffs argued that the traditional consumer expectation test governed and that the question of the existence of a defect was one for the jury without the need for expert opinion. The plaintiffs argue on appeal that the court erred in applying the modified consumer expectation test and, therefore, improperly directed a verdict in favor of the defendants. Because we conclude that the court improperly granted the motion for a directed verdict in favor of the defendants on the ground that it erred in striking all of Ebersole's testimony, and precluding any further testimony from him, and the issue may not arise on retrial, it is unnecessary for us to address the issue of which test applies to the issues in this case.

We begin our analysis with an overview of pertinent decisional law. "[A]part from a specific rule of practice authorizing a sanction, the trial court has the inherent power to provide for the imposition of reasonable sanctions, to compel the observance of its rules." (Internal quotation marks omitted.) *Wyszomierski* v. *Siracusa*, 290 Conn. 225, 234, 963 A.2d 943 (2009). "The court's decision on whether to impose the sanction of excluding [an] expert's testimony . . . is not to be disturbed unless it abused its legal discretion, and [i]n determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) Id., 233. "In reviewing a claim of abuse of discretion, we have stated that [d]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . Therefore, [i]n those cases in which an abuse of discretion is manifest or where injustice appears to have been done, reversal is required." (Internal quotation marks omitted.) *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 392–93, 3 A.3d 892 (2010).

Putting aside the issue of whether Ebersole did intentionally or deceptively mislead the court and the jury in the plaintiffs' attempts to admit the videotape into evidence, or whether the court simply misconstrued the thrust of the proffer, we examine whether the court properly sanctioned the plaintiffs by striking all of Ebersole's prior testimony and precluding him from testifying further on any area other than the videotape.[9] In

---

[9] Essentially, the defendants contend that the court has a general gatekeeping function that "requires it to scrutinize proffered expert testimony of

making this assessment, we are mindful that there was no claim by the defendants, and the court did not make a finding, that any of Ebersole's testimony leading up to the videotape was false, misleading or deceptive.[10] Thus, there was no nexus between the court's finding of deception regarding the videotape and Ebersole's earlier testimony that was unrelated to the videotape.[11] The court could have, as it was first inclined, merely stricken the videotape and instructed the jury to disregard it. Such a curative instruction, coupled with an explicit explanation that the videotape did not portray the same forklift or reflect the same display as the forklift at issue, likely would have minimized any prejudicial impact the videotape may have had on the jury. Further, if the defendants had an issue with Ebersole's

dubious reliability." (Internal quotation marks omitted.) In support of that assertion, the defendants cite to *State* v. *Porter*, 241 Conn. 57, 62–66, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), and *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). Those cases, however, involve scientific reliability, not questions of credibility. As the plaintiffs aptly note, "evidence, neither scientifically obscure nor instilled with an aura of mystic infallibility . . . which merely places a jury . . . in a position to weigh the probative value of the testimony without abandoning common sense and sacrificing independent judgment to the expert's assertions based on his special skill or knowledge . . . is not the type of scientific evidence within the contemplation of *Porter* . . . ." (Citations omitted; internal quotation marks omitted.), quoting *Maher* v. *Quest Diagnostics, Inc.*, 269 Conn. 154, 170 n.22, 847 A.2d 978 (2004). Thus, *Porter* and its kin are inapposite to the issue at hand.

[10] At oral argument before this court, the defendants repeatedly refer to the trial court's finding that Ebersole "manufactured evidence." The trial court did not make, and the record does not support, such a finding.

[11] Ebersole was the plaintiffs' leadoff witness, and he testified extensively before the plaintiffs sought to introduce the videotape into evidence through him. He initially testified regarding his credentials, leading the court to qualify him as an expert witness, and his testimony included opinion evidence. He testified in detail regarding the characteristics of the forklift at issue, with a particular focus on its features and functions. He explained differences between the forklift in this case and other forklifts, specifically focusing on steering mechanisms and control indicators. Additionally, Ebersole emphasized the safety functions of the control mechanisms in forklifts.

credibility, such a concern would have been fodder for zealous cross-examination. Because it is axiomatic that the issue of credibility is solely within the province of the fact finder, and not the court, the jury could have chosen to disregard Ebersole's testimony in part or in whole. The court's ruling striking Ebersole's testimony and precluding his further testimony effectively ended the plaintiffs' case, resulting in a directed verdict. Such a drastic sanction should have been utilized only as a last resort.

Even if the court were inclined to prevent any of Ebersole's testimony from being considered by the jury, the court could have imposed the lesser sanction of precluding his testimony with the granting of a mistrial. The court, however, declined to order a mistrial on the basis that it would give the plaintiffs a second chance in spite of the lack of any finding by the court, or support in the record, that the plaintiffs or their counsel were complicit in Ebersole's behavior that the court characterized as deceptive or extreme sloppiness. In sum, the court's sanction of precluding the plaintiffs from presenting any expert testimony as to the existence of a defect was not proportionate to Ebersole's purported offense and was not consistent with "the judicial policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks omitted.) *Pietraroia* v. *Northeast Utilities*, 254 Conn. 60, 74, 756 A.2d 845 (2000).

On the basis of the foregoing, we conclude that the court improperly struck Ebersole's testimony, improperly precluded him from testifying further and, having taken such action, improperly denied the plaintiffs a reasonable opportunity to present their claim. Because the court directed a verdict in favor of the defendants on the basis of the plaintiffs' failure to present expert testimony as to the defective nature of the forklift at

issue, and the plaintiffs' failure to adduce expert testimony was a direct result of the court's incorrect preclusive orders, the court's judgment directing a verdict in favor of the defendants cannot stand.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.