******************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************

ERIC T. KELSEY *v.* COMMISSIONER
OF CORRECTION
(AC 42932)

Prescott, Suarez and DiPentima, Js.

*Syllabus*

The petitioner, who had been convicted of various crimes, sought a second
writ of habeas corpus, claiming, inter alia, ineffective assistance of
criminal trial counsel and former habeas counsel. The habeas court,
upon the request of the respondent, the Commissioner of Correction,
issued an order to show cause why the petition should be permitted to
proceed in light of the fact that the petitioner had filed it outside of the
two year time limit for successive petitions set forth in the applicable
statute (§ 52-470 (d) (1)). The court conducted an evidentiary hearing
and, thereafter, dismissed the petition pursuant to § 52-470 for lack of
good cause for the delay in filing the successive petition. On the granting
of certification, the petitioner appealed to this court. *Held* that the habeas
court did not abuse its discretion in dismissing the habeas petition and
properly determined that the petitioner failed to establish good cause
for the delay in filing his untimely habeas petition; the petitioner failed
to rebut successfully the presumption of unreasonable delay set forth
in § 52-470, as he failed to demonstrate that something outside of his
control or the control of habeas counsel caused or contributed to the
delay, as the only evidence having been presented was the petitioner's
testimony that he was allegedly unaware of the statutory deadline
imposed by § 52-470 and was never made aware of it by his former
habeas counsel, and that he did not always have access to a law library
or similar legal resource while he was incarcerated and was in lockdown,
evidence that was insufficient to persuade the court that he had rebutted
the presumption of unreasonable delay, and the court properly took
into consideration the lengthy delay, indicating that the second petition
was filed nearly three years beyond the filing deadline, and properly
concluded that, even if it accepted the petitioner's proffered excuses
at face value, a mere assertion of ignorance of the law, without more,
was insufficient, the court having properly noted that ignorance of the
law, in and of itself, was not a legally justified excuse, and the record
sufficiently demonstrated that the court properly weighed relevant fac-
tors in reaching its decision to dismiss the petition, and the petitioner
failed to demonstrate that, under the circumstances, the court's determi-
nation was an abuse of discretion.

Argued September 22—officially released December 22, 2020

*Procedural History*

Petition for a writ of habeas corpus, brought to the
Superior Court in the judicial district of Tolland, where
the court, *Newson, J.*, rendered judgment dismissing
the petition; thereafter, the court granted the petition
for certification to appeal, and the petitioner appealed
to this court. *Affirmed.*

*Naomi T. Fetterman*, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's
attorney, with whom, on the brief, were *Brian W. Pre-
leski*, state's attorney, and *Jo Anne Sulik*, supervisory
assistant state's attorney, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The present appeal provides us with an opportunity to delineate the "good cause" standard that a petitioner must satisfy to overcome the rebuttable presumption that a successive petition for a writ of habeas corpus filed outside of statutorily prescribed time limits is the result of unreasonable delay that warrants dismissal of the petition; see General Statutes § 52-470;[1] and to clarify the appellate standard of review applicable to a habeas court's determination of whether a petitioner has satisfied the good cause standard.

The petitioner, Eric T. Kelsey, appeals from the judgment of the habeas court dismissing his successive petition for a writ of habeas corpus pursuant to § 52-470 (d) and (e). The petitioner claims on appeal that the habeas court improperly determined that his purported ignorance of the filing deadline set forth in § 52-470 (d) (1) and his lack of meaningful access to a law library during some portions of his term of incarceration were insufficient to demonstrate good cause to overcome the statutory presumption of unreasonable delay. We disagree and, accordingly, affirm the judgment of the habeas court.

The procedural background underlying this appeal is as follows. In December, 2003, a jury convicted the petitioner of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (3) and felony murder in violation of General Statutes § 53a-53c.[2] See *State* v. *Kelsey*, 93 Conn. App. 408, 889 A.2d 855, cert. denied, 277 Conn. 928, 895 A.2d 800 (2006). The court sentenced the petitioner to a total effective term of forty years of incarceration. This court affirmed the judgment of conviction on direct appeal, rejecting the petitioner's claims that the trial court improperly had admitted into evidence certain out-of-court statements and had denied his motion for a mistrial based on the state's failure to preserve and produce exculpatory evidence. Id., 410, 416. The Supreme Court denied certification to appeal this court's decision.

After exhausting his direct appeal, in August, 2007, the petitioner filed his first petition for a writ of habeas corpus challenging his conviction.[3] Following a trial on the merits, the habeas court denied the petition. This court dismissed the petitioner's appeal from the judgment of the habeas court by memorandum decision; *Kelsey* v. *Commissioner of Correction*, 136 Conn. App. 904, 44 A.3d 224 (2012); and our Supreme Court thereafter denied him certification to appeal from the judgment of this court. *Kelsey* v. *Commissioner of Correction*, 305 Conn. 923, 47 A.3d 883 (2012).

Nearly five years later, on March 22, 2017, the petitioner filed the underlying second petition for a writ of habeas corpus that is the subject of the present appeal.

The petitioner raised seven claims not raised in his earlier petition.[4] On May 9, 2017, the respondent, the Commissioner of Correction, filed a request with the habeas court pursuant to § 52-470 (e) for an order directing the petitioner to appear and show cause why his second petition should be permitted to proceed in light of the fact that the petitioner had filed it well outside the two year time limit for successive petitions set forth in § 52-470 (d) (1). See footnote 1 of this opinion. The habeas court, *Oliver, J.*, initially declined to rule on the respondent's request for an order to show cause, concluding that the request was premature and that the court lacked discretion to act on the respondent's request because the pleadings in the case were not yet closed.[5] See *Kelsey* v. *Commissioner of Correction*, 329 Conn. 711, 714, 189 A.3d 578 (2018).

After the habeas court denied the respondent's motion for reconsideration, the Chief Justice granted the respondent's request to file an interlocutory appeal from the order of the habeas court pursuant to General Statutes § 52-265a. The Supreme Court rejected the habeas court's reliance on § 52-470 (b) (1)[6] as its basis for not acting on the respondent's request for an order to show cause and concluded that "the habeas court's decision to take no action on the respondent's motion was predicated on its mistaken belief that it lacked discretion to act" and that "[i]t is well established that when a court has discretion, it is improper for the court to fail to exercise it."[7] Id., 726. The Supreme Court reversed the habeas court's decision and remanded the case to the habeas court for further proceedings consistent with its opinion. Id.

In accordance with the Supreme Court's remand order, the habeas court, *Newson, J.*, issued an order to show cause and conducted an evidentiary hearing. The only evidence presented at the hearing was the testimony of the petitioner. The respondent chose not to cross-examine the petitioner or to present any other evidence at the show cause hearing. The court also heard legal arguments from both sides.

Thereafter, on March 20, 2019, the habeas court issued a decision dismissing the petitioner's second habeas petition. In its decision, the habeas court first set forth the relevant provisions of § 52-470 and quoted this court's statement in *Langston* v. *Commissioner of Correction*, 185 Conn. App. 528, 532, 197 A.3d 1034 (2018), appeal dismissed, 335 Conn. 1, 225 A.3d 282 (2020), that good cause is "defined as a substantial reason amounting in law to a legal excuse for failing to perform an act required by law." The habeas court determined that the petitioner's proffered excuse failed to establish good cause under the statute, stating: "[T]he petitioner had until July 12, 2014, to file his next habeas petition challenging this conviction, but he did not file it until nearly three years beyond that date. The petition-

er's claim for delay was that he was sometimes in and out of prison and did not always have access to law books and the law libraries at times when he was held in higher security facilities. He also attempts to offer the excuse that he was not aware of § 52-470. Neither of these is sufficient 'good cause' to excuse the petitioner's delay of nearly three years beyond the appropriate filing deadline for this matter." In support of its analysis, the habeas court, citing *State* v. *Surette*, 90 Conn. App. 177, 182, 876 A.2d 582 (2005), noted parenthetically that "ignorance of the law excuses no one." On the basis of its determination that the petitioner lacked good cause for the delay in filing the successive petition, the court dismissed the petition. The court subsequently granted certification to appeal, and this appeal followed.

The petitioner claims on appeal that the habeas court improperly determined that he failed to establish good cause for the delayed filing of his second petition for a writ of habeas corpus. For the reasons that follow, we disagree.

I

A brief discussion of the governing statute, § 52-470, will aid in our discussion of the petitioner's claim. In *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 153 A.3d 1233 (2017), our Supreme Court had its first opportunity to note the 2012 legislative amendments to § 52-470 that were made as part of "comprehensive habeas reform" and included, inter alia, the addition of subsections (d) and (e) that are at issue in the present appeal. Id., 566. Although the court did not discuss the specific subject of untimely petitions, the court recognized that the 2012 reforms to § 52-470 were "the product of collaboration and compromise by representatives from the various stakeholders in the habeas process" and were "intended to supplement that statute's efficacy in averting frivolous habeas petitions and appeals." Id., 567; see Public Acts 2012, No. 12-115, § 1.

Later, in *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 715–24, our Supreme Court engaged in a more extensive discussion of § 52-470. The court first noted that subsection (a) was not altered substantively by the 2012 amendments and that "the legislature retained language that makes clear that the expeditious resolution of habeas petitions must be accomplished in a manner that does not curtail a petitioner's right to due process. In other words, the two principles of expediency and due process must be balanced in effectuating the legislative intent of the 2012 habeas reform." Id., 716–17. The court explained: "The 2012 amendments are significant . . . because they provide tools to effectuate the original purpose [of § 52-470] of ensuring expedient resolution of habeas cases. The 2012 habeas reform added two procedural mechanisms to assist the habeas court in resolving the case in a sum-

mary way . . . . The amendments to § 52-470 set forth procedures by which the habeas court may dismiss meritless petitions and untimely ones. Specifically, § 52-470 (b) addresses the dismissal of meritless petitions, whereas § 52-470 (c), (d) and (e) provide mechanisms for dismissing untimely petitions." (Citations omitted; internal quotation marks omitted.) Id., 717. "[Section] 52-470 (b) provides the habeas court with a means— short of holding a trial on the merits—to screen out meritless petitions in a manner that allows the petitioner every opportunity to meet the required good cause showing . . . [whereas] § 52-470 (c), (d) and (e) together address whether the petitioner can establish good cause for a delay in filing a petition." Id., 718–19. In other words, these reforms represent the legislature's recognition that in order to resolve meritorious habeas petitions in an expeditious fashion, courts needed additional procedural tools to facilitate summary dispositions of habeas petitions that either failed to raise meritorious claims deserving a full trial or had been pursued in a dilatory manner.

Our Supreme Court recognized that "[a]s compared to the procedures available under § 52-470 (b) to demonstrate that good cause exists for trial, § 52-470 (e) provides significantly less detail regarding the procedures by which a petitioner may rebut the presumption that there was no good cause for a delay in filing the petition." Id., 721. "Nothing in subsection (e) expressly addresses whether the petitioner may present argument or evidence, or file exhibits, or whether and under what circumstances the court is required to hold a hearing, if the court should determine that doing so would assist it in making its determination. The only express procedural requirement is stated broadly. The court must provide the petitioner with a 'meaningful opportunity' both to investigate the basis for the delay and to respond to the order to show cause. . . . The phrase 'meaningful opportunity' is not defined in the statute. That phrase typically refers, however, to the provision of an opportunity that comports with the requirements of due process." (Citations omitted.) Id., 722. "*The lack of specific statutory contours* as to the required 'meaningful opportunity' suggests that *the legislature intended for the court to exercise its discretion* in determining, considering the particular circumstances of the case, what procedures should be provided to the petitioner in order to provide him with a meaningful opportunity, consistent with the requirements of due process, to rebut the statutory presumption." (Emphasis added.) Id., 723.

The Supreme Court had no reason in *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 711, to discuss in detail the parameters of the "good cause" standard because that issue was not before it. It noted only that § 52-470 (e) expressly recognizes that good cause for delay *may* include the "discovery of new evidence which materially affects the merits of the case and

which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection (c) or (d) of this section."[8] (Emphasis omitted; internal quotation marks omitted.) Id., 723–24. The Supreme Court concluded that, "[i]n the absence of any language in [subsection (e)] cabining the discretion of the habeas court with respect to the timing of the issuance of an order to show cause for delay, we conclude that the legislature intended that the court exercise its discretion to do so when the court deems it appropriate given the circumstances of the case." Id., 724.

We read our Supreme Court's discussion of § 52-470 as placing significant emphasis on the discretion that the legislature granted habeas courts to achieve the goals of habeas corpus reform, which included placing express, definitive time limitations on the filing of an initial petition that challenges the judgment of conviction; see General Statutes § 52-470 (c); and on any subsequent, successive petitions. See General Statutes § 52-470 (d). Rather than creating a rigid, unyielding time frame for the filing of petitions akin to that found in ordinary statutes of limitations, the legislature chose, instead, to create only a rebuttable presumption of undue delay, and to afford a petitioner an opportunity to avoid dismissal of an untimely petition by showing "good cause" for the delay. Consistent with our Supreme Court's analysis of the statute's "meaningful opportunity" provision and bearing in mind the goal of the statute to balance expediency and due process, we construe the absence of a detailed statutory definition of the good cause standard as an indication that the legislature intended the habeas court to exercise significant discretion in making determinations regarding "good cause."

II

Before we turn to a discussion of the appropriate standard of review applicable to a habeas court's good cause determination, some additional explication of the good cause standard itself is required.[9] No appellate court has attempted to define with any degree of specificity the meaning of "good cause" in this context. Nevertheless, we do not start with an entirely blank canvas.

In *Langston* v. *Commissioner of Correction*, supra, 185 Conn. App. 528, as in the present case, this court considered a petitioner's appeal from a judgment of the habeas court dismissing, pursuant to § 52-470 (d), an untimely successive petition for lack of good cause.[10] The court in *Langston*, after taking note of the sole express example of good cause provided by the legislature in § 52-470 (e), stated that "[t]he parties also agree that good cause has been defined as a 'substantial reason amounting in law to a legal excuse for failing to perform an act required by law . . . [a] [l]egally sufficient ground or reason.' " Id., 532. The court appears to have accepted the parties' definition of "good cause"

in resolving the appeal before it, but it never stated that it agreed with that definition, nor did it further elaborate on the definition.[11] In short, the *Langston* definition, while technically accurate, provides little guidance as to its application in the habeas context.

In attempting to synthesize a more fulsome definition of good cause as that term is used in § 52-470 (d) and (e), we are mindful that the statute itself provides some interpretive guidance. As we have indicated, the statute does not attempt to exhaustively define good cause. It does, however, provide one example, stating: "For the purposes of . . . [§ 52-470 (e)], good cause includes, *but is not limited to*, the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection (c) or (d) of this section." (Emphasis added.) General Statutes § 52-470 (e). This example of good cause provides insight into the type of circumstances that the legislature intended would satisfy the good cause standard. By indicating that good cause for filing an untimely petition could be met by proffering new legally significant evidence that could not have been discovered with due diligence, the legislature signaled its intent that a good cause determination pursuant to § 52-470 (e) must emanate from a situation that lies outside of the control of the petitioner or of habeas counsel, acting with reasonable diligence.

It is also helpful to seek interpretive guidance from similar instances in which our courts have applied a "good cause" standard in considering whether a party should be permitted to proceed on a late filing. The court in *Schoolhouse Corp.* v. *Wood*, 43 Conn. App. 586, 684 A.2d 1191 (1996), cert. denied, 240 Conn. 913, 691 A.2d 1079 (1997), which was cited by this court in *Langston*, noted that excuses that involved "[n]eglect, indifference, disregard of plainly applicable statutory authority and self-created hardship" would not comport with its definition of good cause. Id., 591–92. Our Supreme Court, in discussing whether to exercise its supervisory authority to consider an untimely filed appeal for "good cause shown" under our rules of practice; see Practice Book § 60-2 (5); similarly has indicated that good cause must involve exceptional circumstances beyond the control of the party seeking to be excused from the filing deadline. See *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 104, 900 A.2d 1242 (2006).

We conclude that to rebut successfully the presumption of unreasonable delay in § 52-470, a petitioner generally will be required to demonstrate that something outside of the control of the petitioner or habeas counsel caused or contributed to the delay. Although it is impossible to provide a comprehensive list of situations that could satisfy this good cause standard, a habeas

court properly may elect to consider a number of factors in determining whether a petitioner has met his evidentiary burden of establishing good cause for filing an untimely petition. Based on the authorities we have discussed and the principles emanating from them, factors directly related to the good cause determination include, but are not limited to: (1) whether external forces outside the control of the petitioner had any bearing on the delay; (2) whether and to what extent the petitioner or his counsel bears any personal responsibility for any excuse proffered for the untimely filing; (3) whether the reasons proffered by the petitioner in support of a finding of good cause are credible and are supported by evidence in the record; and (4) how long after the expiration of the filing deadline did the petitioner file the petition. No single factor necessarily will be dispositive, and the court should evaluate all relevant factors in light of the totality of the facts and circumstances presented.

### III

We turn next to the standard of review applicable to the present appeal, which is a matter disputed by the parties. The petitioner argues that the habeas court's dismissal of his petition for lack of good cause is a legal conclusion that should be subject to plenary review. The petitioner further argues that whether he established good cause under § 52-470 presents an issue of statutory construction over which our review is likewise plenary. The respondent, on the other hand, notes that this court has provided "conflicting suggestions in prior cases" regarding the appropriate standard of review and asks that we "take this opportunity to clarify that the proper standard of review of the habeas court's finding of lack of good cause is abuse of discretion." We agree with the petitioner that, to the extent we must construe the meaning of "good cause," as that term is used in § 52-470, the issue involves principles of statutory interpretation over which our review is always plenary. See *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 715–24. We also agree with the respondent, however, that a habeas court's determination of whether a petitioner has satisfied the good cause standard in a particular case requires a weighing of the various facts and circumstances offered to justify the delay, including an evaluation of the credibility of any witness testimony. As such, the determination invokes the discretion of the habeas court and is reversible only for an abuse of that discretion.[12]

That an abuse of discretion standard of review should apply is consistent with other instances in which reviewing courts have applied that standard in reviewing a lower court's determination involving whether a party has established sufficient "good cause" to proceed on an untimely pleading. For example, in *State* v. *Ayala*, 324 Conn. 571, 585, 153 A.3d 588 (2017),

our Supreme Court indicated that a trial court's decision whether to allow the state to amend a criminal information after a trial had commenced "for good cause shown" is reviewed for an abuse of discretion. Our Supreme Court has also applied an abuse of discretion standard of review when called on to consider this court's determination, pursuant to Practice Book § 60-2 (6), regarding whether a party has established good cause for its failure to file a timely appeal. See *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, 263 Conn. 204, 211, 820 A.2d 224 (2003) ("[w]e cannot conclude on the facts of this case that the Appellate Court abused its discretion in determining that the plaintiff's explanation for its late appeal did not constitute good cause"); see also *Georges* v. *OB-GYN Services, P.C.*, 335 Conn. 669, 689, 240 A.3d 249 (2020) (applying abuse of discretion standard in assessing "whether the defendants established the requisite 'good cause' under Practice Book §§ 60-2 (5) and 60-3"). Similar to the considerable discretion that this court exercises over whether to permit an untimely appeal to proceed, the legislature imparted the habeas court with procedural tools needed to manage its dockets, which included discretion to determine, on a case-by-case basis, whether a petitioner has established "good cause" sufficient to permit an untimely petition to proceed.

We acknowledge that both this court and our Supreme Court have stated that "[t]he conclusions reached by the [habeas] court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review." *Foote* v. *Commissioner of Correction*, 170 Conn. App. 747, 753, 155 A.3d 823, cert. denied, 325 Conn. 902, 155 A.3d 1271 (2017); see also *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 553, 223 A.3d 368 (2020) ("[w]hether a habeas court properly dismissed a petition for a writ of habeas corpus presents a question of law over which our review is plenary"). Those cases, however, did not involve a review of a habeas court's dismissal of a petition following a show cause hearing under § 52-470 (e). Rather, that standard has been applied in appeals that challenged a habeas court's declining to issue a writ pursuant to Practice Book § 23-24, or dismissing a petition for lack of subject matter jurisdiction or other legal ground raised in a motion to dismiss pursuant to Practice Book § 23-29. These types of preliminary dismissals typically are made solely on the basis of the allegations contained in the pleadings, do not ordinarily involve the taking or weighing of evidence, and do not require the exercise of discretion by the habeas court in deciding whether good cause exists.[13]

In contrast, in evaluating whether a petitioner has established good cause to overcome the rebuttable presumption of unreasonable delay in filing a late petition under § 52-470, the habeas court does not make a strictly legal determination. Nor is the court simply

finding facts. Rather, it is deciding, after weighing a variety of subordinate facts and legal arguments, whether a party has met a statutorily prescribed evidentiary threshold necessary to allow an untimely filed petition to proceed. This process is a classic exercise of discretionary authority, and, as such, we will overturn a habeas court's determination regarding good cause under § 52-470 only if it has abused the considerable discretion afforded to it under the statute.

"In reviewing a claim of abuse of discretion, we have stated that [d]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . [Reversal is required only] [i]n those cases in which an abuse of discretion is manifest or where injustice appears to have been done . . . ." *D'Ascanio* v. *Toyota Industries Corp.*, 133 Conn. App. 420, 428, 35 A.3d 388 (2012), aff'd, 309 Conn. 663, 72 A.3d 1019 (2013).

IV

Having provided additional guidance on the meaning of good cause under the statute and clarifying our standard of review, we turn to our consideration of whether, under the circumstances of the present case, the court abused its discretion by determining that the petitioner failed to demonstrate good cause for his delay in filing the second habeas petition. The petitioner does not dispute that his second petition for a writ of habeas corpus challenged the same underlying conviction that he challenged in his first petition or that the second petition was not filed within two years after he had exhausted his appellate rights regarding the dismissal of his first petition. Further, he does not dispute that, pursuant to § 52-470 (d) (1), the untimely filing of the second petition created a rebuttable presumption that the untimely filing was the result of unreasonable delay or that he had the evidentiary burden to overcome that presumption. Rather, the petitioner's argument on appeal is that the habeas court improperly determined that he failed to satisfy this burden. The respondent counters that there is nothing in the record before us from which we could conclude that the habeas court abused its discretion in determining that the petitioner failed to meet his burden of establishing good cause for the delay, and, accordingly, the habeas court properly dismissed the untimely second petition. The respondent also argues that, due to the lack of any particular findings by the court assessing the credibility of the petitioner's testimony at the show cause hearing, we necessarily are limited in our review as to whether the habeas court was required to find good cause on this record as a

matter of law. We conclude that the habeas court properly exercised its discretion in dismissing the petition.

The following additional facts and procedural history are relevant to our discussion of the petitioner's claim. The petitioner was the only witness who testified at the show cause hearing, and no other evidence was offered by the parties. According to his testimony, shortly after the Supreme Court in 2012 finally disposed of his appeal from the denial of his first petition, he received a letter from his appellate habeas counsel. That letter notified him of the Supreme Court's decision regarding the first petition but did not inform him of any time limitation for filing a subsequent petition. Additionally, the petitioner testified about his access to legal resources, such as a law library, during his incarceration. According to the petitioner, beginning sometime in 2012, through the end of February, 2013, he was held in administrative segregation and had no access to a law library. He also testified that he had no access to a law library from February, 2013, through December, 2013, when he was in twenty-two hour a day lockdown. From December, 2013, onward, however, he testified that he was housed in the general prison population on a twenty hour a day lockdown and testified that, during that time, he had access to a law library or the equivalent. The petitioner asserted that, because of his lack of access to legal resources during segregation and lockdown and his former habeas counsel's failure to inform him of the time limitations of § 52-470, he was unaware of the deadline for filing his second habeas petition, and this lack of knowledge necessarily established "good cause" for any delay.

We are not persuaded that the petitioner's alleged lack of knowledge of the deadlines contained in § 52-470, even if deemed credible by the court, is sufficient to compel a conclusion that he had met his burden of demonstrating good cause for the delay. The habeas court properly concluded that a mere assertion of ignorance of the law, without more, is insufficient. The only evidence presented by the petitioner supporting his contention that he was unaware of § 52-470's filing deadline was his own testimony that he lacked personal knowledge of the deadline and that he was never informed of it by his former habeas counsel.

It is unclear whether the habeas court credited the petitioner's assertion. The court stated merely that the petitioner "*attempts to offer the excuse* that he was not aware of § 52-470." (Emphasis added.) Certainly, the habeas court could have chosen not to credit the petitioner's assertion that he was unaware of the filing deadline in light of the fact that the petitioner had initiated both the former and present habeas actions himself, thereby suggesting some familiarity with habeas procedures. Additionally, the latest petition contained a handwritten attachment with legal citations that sug-

gests that the petitioner was able to do some legal research and, with diligence, could have familiarized himself with the requirements of § 52-470. The petitioner's own testimony was that, for some portion of the time prior to the expiration of the two year limitation period, he was housed in the general prison population and had access to legal resources.

Regardless of whether the court credited the petitioner's claim of ignorance of § 52-470, it nevertheless went on to conclude that the petitioner's own ignorance of the law did not satisfy his burden to establish good cause for the untimely filing. This reasoning is legally sound. "The familiar legal maxims, that [everyone] is presumed to know the law, and that ignorance of the law excuses no one, are founded upon public policy and in necessity, and the [principle underlying] them is that one's acts must be considered as having been done with knowledge of the law, for otherwise its evasion would be facilitated and the courts burdened with collateral inquiries into the content of men's minds." *Atlas Realty Corp.* v. *House*, 123 Conn. 94, 101, 192 A. 564 (1937); see also *State* v. *Surette*, supra, 90 Conn. App. 182. We are also not persuaded that the petitioner overcame the presumption simply because he was not represented by counsel at the time he filed the petition. "Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules *of procedural and substantive law*." (Emphasis added.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 549, 911 A.2d 712 (2006).

Furthermore, the petitioner has failed to persuade us that there is any legal significance to the fact that former habeas counsel who represented him with respect to his first petition did not inform him about the statutory deadline for filing a successive petition. The petitioner fails to cite legal authority that imposes any such duty of disclosure on former habeas counsel, nor are we aware of any. Former habeas counsel was engaged to represent the petitioner with respect to the first petition and presumably, consistent with his or her professional obligation, would have endeavored to raise any and all nonfrivolous claims available to the petitioner in that petition.

Because our own habeas corpus standards have developed in tandem with federal habeas corpus jurisprudence; see, e.g., *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 181–82, 982 A.2d 620 (2009); Connecticut courts often have looked to federal habeas decisional law for guidance. Federal courts, in considering whether circumstances exist to warrant equitable tolling of the one year federal habeas corpus statute of limitations for persons incarcerated on state charges; see 28 U.S.C. § 2244 (d) (1) (2018); have held that a petitioner's ignorance of the limitation period or lack

of legal experience generally is insufficient cause to excuse an untimely filed petition. See, e.g., *Waldron-Ramsey* v. *Pacholke*, 556 F.3d 1008, 1013 (9th Cir. 2009) (self-represented petitioner's deprivation of legal materials, confusion or ignorance of law are not circumstances warranting equitable tolling); *Delaney* v. *Matesanz*, 264 F.3d 7, 15 (1st Cir. 2001) (rejecting argument that District Court abused its discretion by not applying equitable tolling principles to save untimely petition filed by self-represented prisoner asserting ignorance of law, quoting *Fisher* v. *Johnson*, 174 F.3d 710, 714 (5th Cir. 1999), cert. denied, 531 U.S. 1164, 121 S. Ct. 1124, 148 L. Ed. 2d 991 (2001), for proposition that "[i]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing"). Although the federal courts apply principles of equitable tolling, we can think of no valid reason why a different standard should apply to a petitioner's knowledge, or lack thereof, of the statutory filing requirements contained in § 52-470. To hold otherwise threatens to create an easily asserted excuse, difficult to disprove, and, if readily accepted, would threaten to undermine the reform that the legislature intended by enacting the statutory time limits.

In light of the deferential standard of review and the record before us, the petitioner has failed to demonstrate on appeal that the habeas court abused its discretion by dismissing his untimely successive petition. The habeas court provided the petitioner with an evidentiary hearing at which he could have presented evidence to satisfy his burden of establishing good cause for the untimely petition. Ultimately, the habeas court concluded that the petitioner failed to provide sufficient evidence to persuade it that he had rebutted the presumption of unreasonable delay. In so concluding, the court properly took into consideration the lengthy delay, indicating that the second petition was filed nearly three years beyond the filing deadline. The court acknowledged the excuses offered by the petitioner for the delay, including that he allegedly was unaware of § 52-470 and that he did not always have access to a law library or similar legal resource while incarcerated. The court made no express findings as to whether it found the petitioner credible, but appeared to conclude that, even if it accepted the petitioner's proffered excuses at face value, they were insufficient in the court's assessment to overcome the statutory presumption of unreasonable delay imposed by the legislature. The court properly noted that ignorance of the law is not, in and of itself, a legally justified excuse. We are satisfied from our review of the record that the habeas court properly weighed relevant factors in reaching its decision to dismiss the petition, and the petitioner simply has failed to demonstrate that, under the circumstances, the habeas court's determination amounted to an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-470 provides in relevant part: "(a) The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments in the case, and shall inquire fully into the cause of imprisonment and thereupon dispose of the case as law and justice require.

* * *

"(d) In the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after the later of the following: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) October 1, 2014; or (3) two years after the date on which the constitutional or statutory right asserted in the petition was initially recognized and made retroactive pursuant to a decision of the Supreme Court or Appellate Court of this state or the Supreme Court of the United States or by the enactment of any public or special act. For the purposes of this section, the withdrawal of a prior petition challenging the same conviction shall not constitute a judgment. The time periods set forth in this subsection shall not be tolled during the pendency of any other petition challenging the same conviction. Nothing in this subsection shall create or enlarge the right of the petitioner to file a subsequent petition under applicable law.

"(e) In a case in which the rebuttable presumption of delay . . . applies, the court, upon the request of the respondent, shall issue an order to show cause why the petition should be permitted to proceed. The petitioner or, if applicable, the petitioner's counsel, shall have a meaningful opportunity to investigate the basis for the delay and respond to the order. If, after such opportunity, the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. For the purposes of this subsection, good cause includes, but is not limited to, the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection . . . (d) of this section . . . ."

[2] The jury acquitted the petitioner of murder in violation of General Statutes § 53a-54a (a). See *State* v. *Kelsey*, 93 Conn. App. 408, 410 n.1, 889 A.2d 855, cert. denied, 277 Conn. 928, 895 A.2d 800 (2006). According to this court's recitation of the facts underlying the petitioner's conviction, the petitioner, during a robbery planned with several coconspirators, stabbed the victim with a knife. Id., 411. The victim later died during surgery. Id., 412.

[3] The petitioner, through court-appointed counsel, filed a one count amended petition in which he argued that his rights to due process and a fair trial had been violated because two coconspirators who testified against him at the criminal trial were offered consideration by the state in exchange for their testimony; that the state failed to disclose that it offered these witnesses consideration; that the witnesses lied when asked at trial if they were offered consideration by the state for their testimony, denying that they had received any consideration; and that the state failed to correct this false testimony.

[4] The petitioner filed the operative petition as a self-represented party. Although he later was appointed habeas counsel, counsel did not file an amended petition. In this second petition, the petitioner raised claims of ineffective assistance of criminal trial counsel and former habeas trial counsel, as well as claims directed at his coconspirator's testimony and other inculpatory evidence admitted at the criminal trial.

[5] The court's order stated in relevant part: "No action will be taken pursuant to [§] 52-470 (b) (1) as the pleadings are not yet closed, thereby making the request premature. The respondent may reclaim the motion at the appropriate time. . . . Upon receipt of the certificate of closed pleadings, the court shall schedule a date to hear argument."

[6] General Statutes § 52-470 (b) (1) provides: "*After the close of all pleadings in a habeas corpus proceeding*, the court, upon the motion of any party or, on its own motion upon notice to the parties, shall determine whether there is *good cause for trial* for all or part of the petition." (Emphasis added.)

[7] The court reasoned that the motion for order to show cause filed by the respondent did not challenge whether there was good cause *to proceed to trial on the merits* with respect to all or part of the petition pursuant to

§ 52-470 (b), but, rather, only sought to have the court address the *timeliness* of the petition, irrespective of its merits, pursuant to subsection (e) of § 52-470, which, unlike subsection (b), did not contain any requirement that pleadings be closed before the court could consider the respondent's request. See *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 720–23.

[8] The legislature chose not to define "good cause" beyond providing this sole example. Although "[w]e are not permitted to supply statutory language that the legislature may have chosen to omit"; (internal quotation marks omitted) *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 721; we nevertheless are permitted, consistent with principles of statutory interpretation, to construe the meaning of the legislature's use of the term "good cause" in this context. See part III of this opinion.

[9] We note that our Superior Courts have sometimes struggled to apply the good cause standard consistently, resulting in disparate results that are not easily reconciled. Compare, e.g., *Shuff* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV-18-4009634-S (April 3, 2019) (holding habeas counsel's failure to advise petitioner of statutory time constraints sufficient to establish good cause for late filing), with *Greenfield* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV-16-4008061-S (October 17, 2019) (holding that petitioner's claim of lack of knowledge of statutory time limits as result of habeas counsel's failure to advise him was insufficient to make showing of good cause needed to file untimely petition).

[10] The petitioner in *Langston* argued before the habeas court and on appeal that there was good cause for the delay in the filing of the successive petition because an attorney who had represented him in conjunction with an earlier habeas petition allegedly had advised him to withdraw that timely filed petition and to file the successive petition in its place, purportedly without explaining to the petitioner the potential legal ramifications of such action. *Langston* v. *Commissioner of Correction*, supra, 185 Conn. App. 532. Because the petitioner did not call his former habeas counsel to testify at the show cause hearing, the habeas court concluded that there was "insufficient evidence to ascertain whether counsel had failed to apprise the petitioner of the time constraints governing his subsequent petition." Id., 533. This court stated that it could not conclude that the habeas court improperly dismissed the petition on that basis. Id.

This court also rejected the petitioner's legal argument that subsections (d) and (e) of § 52-470 were inapplicable because the sole purpose of those provisions was to curtail stale claims brought years after a final judgment was rendered in a prior habeas action. Id., 532–33. The petitioner argued that, although his latest petition technically was untimely, he nonetheless had been challenging his conviction continuously for nearly two decades and, thus, his latest petition was "not representative of the vexatious or frivolous claims that the 2012 reforms to § 52-470 were implemented to address." Id., 533. This court rejected the petitioner's proposed statutory construction, noting that the petitioner voluntarily had withdrawn his prior petition days before a hearing on a motion to dismiss it and on "the relative eve of trial." Id. This court explained that "[t]he fact that the petitioner has litigated previous habeas claims does not excuse or justify this tactic, nor does it explain his failure to refile this case before the [statutory] deadline." Id. At the conclusion of its analysis, this court stated: "We cannot conclude that this argument demonstrates good cause for this untimely petition." Id. To the extent that our conclusion could be misconstrued as having rendered de novo review as to whether the petitioner met his burden of establishing good cause, a standard of review that we reject in part III of this opinion, we clarify that we were rejecting, as a matter of law, the statutory construction argument advanced by the petitioner.

[11] The definition was taken from *Schoolhouse Corp.* v. *Wood*, 43 Conn. App. 586, 591, 684 A.2d 1191 (1996), cert. denied, 240 Conn. 913, 691 A.2d 1079 (1997), which was quoting a generalized definition of "good cause" found in Black's Law Dictionary (6th Ed. 1990), in the context of a discussion of a court's common-law, discretionary authority to grant an untimely motion to substitute a decedent's executor as a party defendant.

[12] It is, of course, axiomatic that in applying the abuse of discretion standard, "[t]o the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . ." (Internal quotation marks omitted.) *Carter* v. *Commissioner of Correction*, 133 Conn. App. 387, 392, 35 A.3d 1088, cert. denied, 307 Conn. 901, 53 A.3d 217 (2012).

[13] The petitioner cites *Johnson* v. *Commissioner of Correction*, 285 Conn.

556, 566, 941 A.2d 248 (2008), for the proposition that our review should be plenary. *Johnson* also did not involve a challenge to a good cause determination made pursuant to § 52-470 but, instead, was an appeal following a trial on the merits of a habeas petition in which the habeas court had dismissed a portion of the petition on the basis of procedural default. As authority for the standard of review it imposed in *Johnson*, the court cited language from *In re Jonathan M.*, 255 Conn. 208, 217, 764 A.2d 739 (2001). In *In re Jonathan M.*, our Supreme Court reviewed the dismissal of a habeas petition that sought to collaterally attack a judgment terminating parental rights on the ground that the respondent received ineffective assistance of counsel. Because the question of whether a respondent in a termination of parental rights case properly could assert a claim of ineffective assistance of counsel raised a pure question of law, the court's application of plenary review in that case is distinguishable from the decision under review in the present matter.

_____