******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTHONY VELEZ *v.* COMMISSIONER
OF CORRECTION
(AC 42446)

Lavine, Alvord and Cradle, Js.*

*Syllabus*

The petitioner, who had been convicted of the crimes of murder, burglary
in the first degree and criminal mischief in the first degree, filed a second
petition for a writ of habeas corpus, claiming that his prior habeas
counsel had provided ineffective assistance. The habeas court, upon
the request of the respondent Commissioner of Correction, issued an
order to show cause why the petition, which was filed in August, 2015,
should be permitted to proceed in light of the fact that the petitioner
had filed it beyond the October 1, 2014 deadline for successive petitions
set forth in the applicable statute (§ 52-470 (d) (2)). The court conducted
an evidentiary hearing, during which the petitioner presented a 2005
report of a neuropsychological evaluation of the petitioner, which
described in depth his mental deficiencies. The petitioner asserted that
those deficiencies established good cause for his delay in filing the
second habeas petition because they prevented him from obtaining the
legal assistance while he was incarcerated to file it in a timely manner.
The habeas court dismissed the petition pursuant to § 52-470 (e) for
lack of good cause for the delay in filing the successive petition, conclud-
ing that, although the petitioner's mental deficiencies were significant,
he failed to prove that they contributed to his delay in filing the petition.
Thereafter, the petitioner, on the granting of certification, appealed to
this court. *Held* that the habeas court did not abuse its discretion in
dismissing the second habeas petition and properly determined that
the petitioner failed to establish good cause for the delay in filing the
successive petition; contrary to the petitioner's claim, that court properly
determined that the petitioner failed to prove that his mental deficienc-
ies, as described in the 2005 report, contributed to his delay in filing
the second habeas petition and, thus, failed to rebut the presumption
of unreasonable delay set forth in § 52-470 (d), as the record indicated
that the petitioner presented no evidence of the nature of his deficiencies
during the relevant time frame or how they contributed to the delay in
filing the second habeas petition, and the court's determination was
supported by the petitioner's having obtained a general equivalency
diploma and having completed college classes and his success in filing
two habeas petitions as a self-represented party, despite the alleged
prevalence of his deficiencies.

Argued September 8, 2020—officially released March 9, 2021

*Procedural History*

Petition for a writ of habeas corpus, brought to the
Superior Court in the judicial district of Tolland, where
the court, *Bhatt, J.*; rendered judgment dismissing the
petition, from which the petitioner, on the granting of
certification, appealed to this court. *Affirmed.*

*Michael W. Brown*, for the appellant (petitioner).

*Sarah Hanna*, senior assistant state's attorney, with
whom, on the brief, were *Brian Preleski*, state's attor-
ney, and *Jo Anne Sulik*, supervisory assistant state's
attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Anthony Velez, appeals from the judgment of the habeas court dismissing his successive petition for a writ of habeas corpus pursuant to General Statutes § 52-470 (d) and (e).[1] On appeal, the petitioner claims that the habeas court improperly determined that evidence of his mental deficiencies set forth in a 2005 neurological report was insufficient to demonstrate good cause within the meaning of § 52-470 (e) to overcome the statutory presumption of unreasonable delay in filing his successive habeas petition. We disagree with the petitioner and, accordingly, affirm the judgment of the habeas court.

The procedural background underlying this appeal is as follows. On July 24, 2006, after a jury trial, the petitioner was convicted of murder in violation of General Statutes § 53a-54a, burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), and criminal mischief in the first degree in violation of General Statutes § 53a-115 (a) (1). On September 15, 2006, the trial court, *D'Addabbo, J.*, sentenced the petitioner to a total effective term of sixty years of incarceration. On March 24, 2009, this court affirmed the judgment of conviction on direct appeal. *State* v. *Velez*, 113 Conn. App. 347, 349, 966 A.2d 743, cert. denied, 291 Conn. 917, 970 A.2d 729 (2009). On May 6, 2009, our Supreme Court denied the petitioner certification to appeal from this court's judgment. *State* v. *Velez*, 291 Conn. 917, 970 A.2d 729 (2009).

On June 5, 2007, the petitioner, as a self-represented party, filed a petition for a writ of habeas corpus challenging his conviction (first habeas petition).[2] On January 24, 2011, following a trial on the merits, the habeas court, *Fuger, J.*, issued a memorandum of decision denying the petition. *Velez* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-07-4001763-S (January 24, 2011).[3] The petitioner appealed to this court but withdrew the appeal on August 8, 2011.

On August 31, 2015, the petitioner, as a self-represented party, filed the present petition for a writ of habeas corpus (second habeas petition).[4] The habeas court subsequently granted the petitioner's request that counsel be appointed for him. On March 20, 2017, the respondent, the Commissioner of Correction, filed a request pursuant to § 52-470 (e), for an order directing the petitioner to appear and to show cause why the second habeas petition should be permitted to proceed in light of the fact that he filed it beyond the deadline for successive habeas petitions set forth in § 52-470 (d). In his request, the respondent argued that the petitioner's second habeas petition was untimely because the petitioner did not file it until August 31, 2015, beyond the October 1, 2014 statutory deadline, and, therefore, the rebuttable presumption that the filing of the petition

has been delayed without good cause applied.[5]

The habeas court, *Bhatt, J.*, issued an order to show cause and, on September 26, 2018, conducted an evidentiary hearing. At the show cause hearing, the petitioner presented one exhibit—a 2005 report of a neuropsychological evaluation of the petitioner that was conducted by Cristina L. Ciocca, a clinical neuropsychologist, at the request of the petitioner's criminal trial counsel (2005 report). The respondent presented three exhibits—Judge Fuger's memorandum of decision denying the petitioner's first habeas petition, the petitioner's form appealing from that decision, and the petitioner's form withdrawing that appeal. Neither the petitioner nor the respondent presented testimony at the show cause hearing. The court heard legal arguments from both parties.[6]

The 2005 report that was presented by the petitioner describes in depth the petitioner's deficiencies that were observed by Ciocca at the time of the evaluation. The 2005 report concluded, inter alia, that the petitioner, suffers from "working memory deficits, poor deployment of attention, and executive dysfunction. His difficulties breaking down complex information into more manageable units precipitated ease of becoming overwhelmed, frustration, and a tendency to withdraw in order to preserve internal integrity." The 2005 report additionally determined that "[t]hese difficulties further impacted his capacity to learn novel information, benefit from external feedback, and process directions. Concomitantly, these findings suggested evidence of neurological impairment possibly associated with Fetal Alcohol Syndrome . . . ."

The petitioner's counsel argued that the "mental impairments and deficiencies" suffered by the petitioner, as described in the 2005 report, established good cause for the delay in filing the second habeas petition. The petitioner's counsel maintained that the petitioner suffered "debilitating mental illnesses and learning disabilities" that prevented him from seeking "the appropriate guidance and counsel while he was incarcerated to properly file the [second] habeas [petition] in a timely manner." The petitioner's counsel added that, although his psychological evaluation was prepared in 2005, "these are the same things that [the petitioner] is currently suffering from."

The respondent argued that the petitioner's filing of his first and second habeas actions as a self-represented party demonstrates that he was aware of how to file a petition for a writ of habeas corpus but failed to do so here in a timely manner.[7] The petitioner responded that he was able to file the first and second habeas petitions as a self-represented party only because he received help in drafting them. The petitioner offered no evidence as to why he was unable to obtain that same assistance in drafting and filing the second habeas peti-

tion prior to the October 1, 2014 statutory deadline.

Following the show cause hearing, on October 16, 2018, the court ordered the parties to file posthearing memoranda addressing the following question: "Do the petitioner's deficits, as outlined in [the 2005 report], rebut the presumption that there is no good cause for the delay in the filing of the [second] habeas petition?"

On October 31, 2018, both parties submitted posthearing memoranda addressing the court's order. Consistent with his argument at the show cause hearing, the petitioner argued that his "serious psychological and learning disabilities" prevented him from obtaining "the necessary legal assistance while incarcerated" to file the second habeas petition in a timely manner. He argued that the 2005 report evidenced these deficiencies and that they "still afflict him today." The respondent argued that the petitioner failed to demonstrate any connection between the "alleged deficits noted by [the] retained psychologist" in the 2005 report and his "failure to pursue habeas corpus relief during the four year period between August, 2011 and August, 2015." In addition, the respondent challenged the weight of the 2005 report because it was not current, it contained conflicting information regarding the petitioner's intelligence, and it was never subject to challenge regarding its findings and conclusions. The respondent further noted that the petitioner's history, which included speaking two languages, obtaining a general equivalency diploma, completing college classes, filing the first habeas petition as a self-represented party, and filing the second habeas petition as a self-represented party, supported the conclusion that the petitioner failed to demonstrate good cause to justify his late filing.

On November 6, 2018, the habeas court issued a memorandum of decision, in which it concluded that, although the petitioner's deficiencies were "significant,"[8] he failed to prove that those deficiencies contributed to his delay in filing the second habeas petition. Specifically, the court determined: "[T]he court finds . . . that the petitioner has failed to prove how his deficits affected his ability to timely file this second petition. The petitioner points to nothing in the 2005 report that shows his deficits are of such a nature that he was unable to file a second petition between August, 2011 and August, 2015.[9] Acknowledging that the petitioner likely suffers from several deficits that affect his mental capacity is not sufficient to overcome the presumption that there is no good cause for the delay. The petitioner must prove that these deficits are the reason for the delay and it is these deficits that prevented him from timely filing the petition.[10] That he has not done. A review of the [2005 report] does not lead this court to conclude that any of the petitioner's deficits prohibited him from filling out the limited application for a writ of habeas corpus. Indeed, the petitioner has

twice filed petitions for writ of habeas corpus.

"Thus, the court is constrained to conclude that the petitioner's deficits, while significant, have not been proven to be the reason the petition was untimely filed and thus, do not rebut the statutory presumption [of unreasonable delay]. The petition must be dismissed." (Citations omitted; footnotes added; footnote omitted; internal quotation marks omitted.).

On November 15, 2018, the habeas court granted certification to appeal. This appeal followed.

On appeal, the petitioner claims that the habeas court improperly determined that he failed to present sufficient evidence to demonstrate good cause within the meaning of § 52-470 (e) to overcome the statutory presumption of unreasonable delay.[11] Specifically, he argues that the court's finding of "significant mental impairments . . . in areas that logically would impact the petitioner's ability to comprehend the need to act and his ability to act in accordance with that need is sufficient to find that the petitioner displayed actual difficulties that created a significant burden on the petitioner's ability to file a timely petition." The respondent contends that, although the 2005 report "documented the petitioner's mental health history, albeit only through 2005, it provides no insight into the issue of how his deficits affected his ability to timely file his [second habeas] petition" prior to the October 1, 2014 deadline. (Internal quotation marks omitted.) The respondent further argues that the petitioner has failed to meet his burden of demonstrating good cause to overcome the statutory presumption of unreasonable delay because "the petitioner adduced no other evidence supporting his claim that his delay in filing was because of his mental [deficiencies], rather than a lack of due diligence." We agree with the respondent.

"[T]o rebut successfully the presumption of unreasonable delay in § 52-470, a petitioner generally will be required to demonstrate that something outside of the control of the petitioner or habeas counsel *caused or contributed to the delay*. Although it is impossible to provide a comprehensive list of situations that would satisfy this good cause standard, a habeas court properly may elect to consider a number of factors in determining whether a petitioner has met his evidentiary burden of establishing good cause for filing an untimely petition. . . . [F]actors directly related to the good cause determination include, but are not limited to: (1) whether external forces outside the control of the petitioner had any bearing on the delay; (2) whether and to what extent the petitioner or his counsel bears any personal responsibility for any excuse proffered for the untimely filing; (3) whether the reasons proffered by the petitioner in support of a finding of good cause are credible and are supported by evidence in the record; and (4) how long after the expiration of the

filing deadline did the petitioner file the petition. No single factor necessarily will be dispositive, and the court should evaluate all relevant factors in light of the totality of the facts and circumstances presented." (Emphasis added.) *Kelsey* v. *Commissioner of Correction*, 202 Conn. App. 21, 34–35,    A.3d    (2020), cert. granted, 336 Conn. 912,    A.3d    (2021).

"[A] habeas court's determination of whether a petitioner has satisfied the good cause standard in a particular case requires a weighing of the various facts and circumstances offered to justify the delay, including an evaluation of the credibility of any witness testimony." Id., 35–36. "[W]e will overturn a habeas court's determination regarding good cause under § 52-470 only if it has abused the considerable discretion afforded to it under the statute.[12] In reviewing a claim of abuse of discretion, we have stated that [d]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . [Reversal is required only] [i]n those cases in which an abuse of discretion is manifest or where injustice appears to have been done . . . ." (Footnote added; internal quotation marks omitted.) Id., 38.

The habeas court found that "the petitioner point[ed] to nothing in the 2005 report that shows his deficits are of such a nature that he was unable to file a second petition between August, 2011 and August, 2015." Our review of the record indicates that, although the petitioner's counsel represented that the deficiencies set forth in the 2005 report "still afflict him today," the petitioner presented no evidence of the nature of his deficiencies during the relevant time frame or how his deficiencies contributed to the delay in filing the second habeas petition. Rather, the court's determination that the petitioner "failed to prove how his deficits affected his ability to timely file this second petition" is supported by the petitioner's having obtained a general equivalency diploma and completed college classes and his success in filing two habeas petitions as a self-represented party, despite the alleged prevalence of his deficiencies. The court therefore did not err in concluding that "the petitioner's deficits, while significant, have not been proven to be the reason [that] the petition was untimely filed and thus, do not rebut the statutory presumption [of unreasonable delay]."

We conclude that the habeas court properly determined that the petitioner failed to establish good cause for the delay in filing his successive habeas petition. Accordingly, the habeas court did not abuse its discretion in dismissing the petitioner's second habeas peti-

tion pursuant to § 52-470 (d) and (e).

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] General Statutes § 52-470 provides in relevant part: "(a) The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments in the case, and shall inquire fully into the cause of imprisonment and thereupon dispose of the case as law and justice require. . . .

"(d) In the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after the later of the following: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) October 1, 2014; or (3) two years after the date on which the constitutional or statutory right asserted in the petition was initially recognized and made retroactive pursuant to a decision of the Supreme Court or Appellate Court of this state or the Supreme Court of the United States or by the enactment of any public or special act. For the purposes of this section, the withdrawal of a prior petition challenging the same conviction shall not constitute a judgment. The time periods set forth in this subsection shall not be tolled during the pendency of any other petition challenging the same conviction. Nothing in this subsection shall create or enlarge the right of the petitioner to file a subsequent petition under applicable law.

"(e) In a case in which the rebuttable presumption of delay . . . applies, the court, upon the request of the respondent, shall issue an order to show cause why the petition should be permitted to proceed. The petitioner or, if applicable, the petitioner's counsel, shall have a meaningful opportunity to investigate the basis for the delay and respond to the order. If, after such opportunity, the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. For the purposes of this subsection, good cause includes, but is not limited to, the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection . . . (d) of this section. . . ."

[2] In the first habeas petition, the petitioner claimed that his criminal trial counsel, Attorney Claud E. Chong, rendered ineffective assistance in that he failed to object to Judge D'Addabbo's response to a note sent out by the jury regarding the element of intent required for a murder conviction, thereby failing to preserve the issue for appeal.

[3] Although Judge Fuger's memorandum of decision is dated January 20, 2011, it was filed on January 24, 2011.

[4] In his second habeas petition, the petitioner claimed that his prior habeas counsel, Attorney Bruce B. McIntyre, rendered ineffective assistance in that he failed (1) to present claims that the petitioner felt were the strongest, (2) to properly present evidence of a report from a clinical neurologist to establish that the petitioner suffered mental deficiencies, (3) to properly question his criminal trial counsel, Attorney Claud E. Chong, to establish that he was constitutionally ineffective, and (4) to present evidence to establish that the petitioner was medicated before, during, and after his criminal trial.

[5] The judgment rendered on the petitioner's first habeas petition was a final judgment, pursuant to § 52-470 (d), on August 8, 2011. See General Statutes § 52-470 (d) ("[i]n the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed *after the later of the following*: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; [or] (2) *October 1, 2014*" (emphasis added)).

[6] The petitioner requests a remand for a new show cause hearing on the basis that "the parties to the proceeding were at least somewhat unclear about the proper procedure and parameters for the [show] cause hearing." The petitioner contends that, "[although] the habeas court did not specifically restrict the offering of live testimony, [it] did comment on the uncer-

tainty about the parameters [of the show cause hearing], and did not specifically offer the opportunity to present witnesses.”

At the show cause hearing, the court stated that, “pursuant to § 52-470 [(e)] . . . the petitioner shall have a meaningful opportunity to investigate the basis for delay and respond to the order. And so we’re here [to do] that.” The court then asked the petitioner’s counsel, “so counsel . . . *what do you wish to present*?” (Emphasis added.) The petitioner did not request to present testimony. Pursuant to the court’s invitation, the petitioner offered the 2005 report as an exhibit. The respondent objected to the court considering the 2005 report as a full exhibit on the basis that the 2005 report was hearsay and that the respondent was not afforded the opportunity to review it. In determining the contested admissibility of the 2005 report as an exhibit, the court noted that “the parameters of this hearing are . . . not really well defined . . . .” After hearing argument from both parties, the court decided that it “sounds like the matters contained in the [2005 report] go to the petitioner’s claim that there is good cause, because it affected him in some way from being able to pursue the timely filing of the subsequent habeas petition. I’m going to admit [the 2005 report] as a full exhibit for purposes of this hearing.” The court additionally allowed argument from both parties. Finally, before concluding the hearing, the court observed that the petitioner “wishe[d] to address the [c]ourt” and advised the petitioner’s counsel, “[w]hy don’t you talk to him first and see what it is he wants to say.” The court then heard statements regarding what the petitioner wished to add.

In *Kelsey* v. *Commissioner of Correction*, 329 Conn. 711, 721, 189 A.3d 578 (2018), our Supreme Court recognized that “§ 52-470 (e) provides [little] detail regarding the procedures by which a petitioner may rebut the presumption that there was no good cause for a delay in filing the petition.” “Nothing in subsection (e) expressly addresses whether the petitioner may present argument or evidence, or file exhibits, or whether and under what circumstances the court is required to hold a hearing, if the court should determine that doing so would assist it in making its determination. The only express procedural requirement is stated broadly. The court must provide the petitioner with a ‘meaningful opportunity’ both to investigate the basis for the delay and to respond to the order to show cause.” Id., 722. “The lack of specific statutory contours as to the required ‘meaningful opportunity’ suggests that the legislature intended for the court to exercise its discretion in determining, considering the particular circumstances of the case, what procedures should be provided to the petitioner in order to provide him with a meaningful opportunity, consistent with the requirements of due process, to rebut the statutory presumption.” Id., 723. Because the habeas court considered all of the evidence that the petitioner presented at the show cause hearing, we conclude that it provided the petitioner with a meaningful opportunity to rebut the statutory presumption in accordance with § 52-470 (e). Therefore, we reject the petitioner’s request for a remand for a new show cause hearing.

[7] The respondent made no argument with respect to the 2005 report because the petitioner’s counsel had provided it to the respondent only that day.

[8] In addressing the petitioner’s deficiencies set forth in the 2005 report, the court found: “[T]he court finds that the evidence submitted plainly shows that the petitioner has experienced mental deficits since a very young age. [The 2005 report] chronicles his numerous psychiatric hospitalizations and psychological evaluations beginning at age six. He has at times reported auditory hallucinations and has been prescribed medication for it. He has, at various times over his life, been subject to IQ testing that has placed him in a variety of ranges, from borderline range of intelligence . . . to a full scale IQ of 102, which is average. . . . Testing conducted by the neuropsychologist in 2005 resulted in a full scale IQ of 88 or 94, depending on the test. . . . The petitioner’s gestational development was negatively impacted by his mother’s regular alcohol use during her pregnancy . . . and there are indications from his pediatrician that he had brain damage from an early age. There are undoubtedly general developmental delays . . . and evidence of working memory deficits, poor deployment of attention, and executive dysfunction. . . . The court accepts that his weaknesses with cognitive flexibility and problem solving make him less adept at processing information.” (Citations omitted; internal quotation marks omitted.)

The habeas court found that “[t]he [2005] neuropsychological report makes reference to psychiatric illnesses and developmental disabilities. The court consider[ed] the entirety of the petitioner’s deficiencies.”

[9] The petitioner claims on appeal that the court erred in finding that the

"four year period" between the date of final judgment on the first habeas petition (August, 2011) and the filing of the second habeas petition (August, 2015) was relevant to the determination of whether good cause exists to excuse the late filing. In its memorandum of decision, the court stated that, "[although] the untimely nature of the petition is measured against the October 1, 2014 date, the four year period since [the petitioner's] appeal was withdrawn is relevant to the determination of whether good cause exists to excuse the late filing. The petitioner had, in essence, that entire period to file a second petition for writ of habeas corpus to diligently pursue his legal rights."

We are not persuaded that the court abused its discretion in concluding that the petitioner failed to establish good cause for the delay merely because it referenced as relevant the "four year period" between the final judgment on the first habeas petition and the filing of the second habeas petition. First, the court prefaced this statement with the recognition that "the untimely nature of the petition is measured against the October 1, 2014 date . . . ." Second, the court's determination that the petitioner failed to show good cause centered on its finding that the petitioner had failed to show how the mental deficiencies set forth in the 2005 report contributed to the delay in filing the second habeas petition, a failing that is unrelated to the time period between filings.

[10] The petitioner claims that "[t]he habeas court erred by directly applying the test for delay that is applied by the federal courts when addressing violations of the federal statute of limitations." The petitioner maintains that, "[although] the habeas court reasonably looked to the federal habeas tolling case law for guidance, it should have done so with the understanding that the judicially created doctrine applicable to federal tolling claims would logically be more severe than the appropriate analysis to be applied to the rebuttable presumption [set forth in § 52-470 that] the habeas court faced." The respondent argues that "the habeas court [merely] analogized § 52-470 (e) to the federal statute of limitations. . . . In doing so, the habeas court noted that, in the context of mental illness, in order to satisfy the federal equitable tolling standard a petitioner was required to demonstrate an ' "extraordinary circumstance" severely impairing the ability to comply with the filing deadline, despite diligent efforts to do so.' [See *Bolarinwa* v. *Williams*, 593 F.3d 226, 231 (2d Cir. 2010).] Nevertheless, in its analysis of the petitioner's claim of good cause, the habeas court did not apply the doctrine of equitable tolling or utilize the same standard. . . . Rather, it simply concluded that the petitioner had shown no connection between his deficits and his failure to timely file." We agree with the respondent.

By "applying the *reasoning* of *Bolarinwa* . . . to § 52-470 and the facts of this case," the court derived the principle that "[t]he petitioner must prove that [his] deficits are the reason for the delay and it is these deficits that prevented him from timely filing the petition." (Emphasis added.) Ultimately, the court concluded that "the petitioner has failed to prove how his deficits affected his ability to timely file this second petition." The court's reasoning was consistent with the standard to rebut successfully the presumption of unreasonable delay in § 52-470 that this court recently set forth in *Kelsey* v. *Commissioner of Correction*, 202 Conn. App. 21, 34,     A.3d     (2020), cert. granted, 336 Conn. 912,     A.3d     (2021) ("[w]e conclude that to rebut successfully the presumption of unreasonable delay in § 52-470, a petitioner generally will be required to demonstrate that something outside of the control of the petitioner or habeas counsel *caused or contributed to the delay*" (emphasis added)). We, therefore, decline to conclude that the court erred in its analysis of the petitioner's claim of good cause for delay.

[11] The petitioner does not dispute that the filing of the second habeas petition was untimely under § 52-470 (d).

[12] "It is, of course, axiomatic that in applying the abuse of discretion standard, [t]o the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . ." (Internal quotation marks omitted.) *Kelsey* v. *Commissioner of Correction*, supra, 202 Conn. App. 36 n.12.