KAHN, J.
**712 The sole question presented in this certified public interest appeal is whether General Statutes § 52-470 divests the habeas court of discretion to determine when it should act on a motion by the respondent, the Commissioner of Correction, for an order to show cause why an untimely petition should be permitted to proceed. In the present case, the habeas court took no action on the motion of the respondent requesting the **713 court, pursuant to § 52-470 (d) and (e), to order the petitioner, Eric Thomas Kelsey, to show cause why his petition should be permitted to proceed despite his delay in filing it. The court interpreted § 52-470 to deprive it of discretion to act on the respondent's motion prior to the close of all pleadings. Upon concluding both that this matter involved issues of substantial public interest and that further delay may work a substantial injustice, the Chief Justice granted the respondent's request to file an interlocutory appeal pursuant to General Statutes § 52-265a.[1]
In this appeal, we are presented with three proposed interpretations of § 52-470 *580 regarding the degree to which, if at all, that statute constrains the discretion of the habeas court as to when it may act on the respondent's motion for an order to show good cause why a petition should be permitted to proceed when a petitioner has delayed in filing the habeas petition. The habeas court believed that § 52-470 (b) (1) required the court to wait until the close of all pleadings to act on the respondent's motion. The respondent contends that the court mistakenly relied on § 52-470 (b) (1) in declining to act on his motion. The respondent argues that § 52-470 (e) controls and requires that, once the court is presented with a timeliness challenge to the petition, the court must resolve that question before the action is allowed to proceed further. The petitioner agrees with the respondent that § 52-470 (e), rather than § 52-470 (b), applies, but argues that, under that subsection, the habeas court retains discretion to decide when to issue the order. We conclude that § 52-470 (e) applies and does not limit the discretion of the habeas court **714 as to when it may act on a motion for an order to show cause why an untimely petition should be permitted to proceed. Accordingly, we conclude that the habeas court improperly determined that it lacked discretion to act on the respondent's motion for an order to show cause because the pleadings in the case were not yet closed. We therefore reverse the determination of the habeas court that it could not act on the respondent's motion for an order to show cause why the petition should be permitted to proceed.
The following procedural background is relevant to our resolution of this appeal. The petitioner, following a jury trial, was convicted of felony murder in violation of General Statutes § 53a-54c and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (3). After the petitioner exhausted his direct appeals, he filed a petition for a writ of habeas corpus in August, 2007. Following a trial on the merits, the habeas court denied his petition in 2010. The Appellate Court dismissed his appeal from the judgment of the habeas court; Kelsey v. Commissioner of Correction , 136 Conn. App. 904, 44 A.3d 224 (2012) ; and this court denied certification to appeal from the Appellate Court's judgment. Kelsey v. Commissioner of Correction , 305 Conn. 923, 47 A.3d 883 (2012).
The petitioner filed his second habeas petition in March, 2017, more than two years after the judgment was final on his prior petition. The respondent moved for an order directing the petitioner to show cause why his petition should be permitted to proceed when he filed his subsequent petition outside the two year limit set forth in § 52-470 (d) (1). In a brief order issued one week after the respondent filed the motion, the habeas court ruled that, pursuant to § 52-470 (b) (1), it would take no action on the motion until after the pleadings had closed. Shortly thereafter, the respondent moved **715 for reconsideration, which the habeas court granted. In its memorandum of decision, issued seven days after the respondent filed the motion for reconsideration, the court denied the requested relief, explaining that the court interpreted § 52-470 to deprive it of discretion to act on the respondent's motion prior to the close of the pleadings. Relying on § 52-470 (b) (1), the court stated that "the language of ... § 52-470 is clear and unambiguous as to the requirement that the pleadings be closed before a request for an order to 'show cause' may be entertained." Accordingly, the court upheld its earlier decision to take no action on the respondent's motion. This public interest appeal followed.
The issue before the court is whether § 52-470 divests the habeas court *581 of discretion to determine when it should act on a respondent's motion for an order to show cause why an untimely petition should be permitted to proceed. That issue presents a question of statutory interpretation over which we exercise plenary review, guided by well established principles regarding legislative intent. See, e.g., Kasica v. Columbia , 309 Conn. 85, 93, 70 A.3d 1 (2013) (explaining plain meaning rule under General Statutes § 1-2z and setting forth process for ascertaining legislative intent).
We recently recognized that the 2012 amendments to § 52-470 were the result of "comprehensive habeas reform," and that the new provisions of § 52-470"are intended to supplement that statute's efficacy in averting frivolous habeas petitions and appeals. See Public Acts 2012, No. 12-115, § 1 [P.A. 12-115]." Kaddah v. Commissioner of Correction , 324 Conn. 548, 566-67, 153 A.3d 1233 (2017). Mindful of that legislative purpose, we begin our analysis with the language of § 52-470, which is comprised of seven subsections, five of which- § 52-470 (a) through (e) -are relevant to our analysis.
**716 We first review subsection (a), which existed in substantially identical form prior to the 2012 amendments to § 52-470 ; see General Statutes (Rev. to 2011) § 52-470 (a) ; and pertains to the proceedings during a trial on the merits. That subsection provides: "The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments in the case, and shall inquire fully into the cause of imprisonment and thereupon dispose of the case as law and justice require." General Statutes § 52-470 (a). Subsection (a) makes clear that the primary goal of § 52-470 is to ensure that habeas actions "proceed in a summary way ...." This court previously has construed the phrase "in a summary way" to mean that habeas proceedings must be conducted in a manner that is "prompt and without unreasonable and unnecessary delay." (Internal quotation marks omitted.) Hogewoning v. Hogewoning , 117 Conn. 264, 265, 167 A. 813 (1933).[2]
The language of § 52-470 (a), which was not substantively altered by P.A. 12-115, provides a helpful backdrop for understanding the remainder of the statute. As Hogewoning illustrates, the statute has always had the legislative purpose of ensuring the efficient and expeditious resolution of habeas petitions. We consider it significant that, notwithstanding the comprehensive nature of the 2012 habeas reform, through which five entirely new subsections were added to the statute, the legislature left intact the final clause of § 52-470 (a), which provides that the habeas court "shall ... dispose of the case as law and justice require." Thus, the legislature retained language that makes clear that the expeditious resolution of habeas petitions must be accomplished in a manner that does not curtail a petitioner's right to due process. In other words, the two **717 principles of expediency and due process must be balanced in effectuating the legislative intent of the 2012 habeas reform.
The 2012 amendments are significant not because they effectuate an entirely new purpose, but because they provide tools to effectuate the original purpose of ensuring expedient resolution of habeas cases. The 2012 habeas reform added two procedural mechanisms to assist the habeas court in resolving the case "in a summary way ...."
*582 General Statutes § 52-470 (a). The amendments to § 52-470 set forth procedures by which the habeas court may dismiss meritless petitions and untimely ones. Specifically, § 52-470 (b) addresses the dismissal of meritless petitions, whereas § 52-470 (c), (d) and (e) provide mechanisms for dismissing untimely petitions.
We turn to § 52-470 (b), which the trial court relied on in concluding that it lacked discretion to act on the respondent's motion for an order to show cause. That subsection authorizes the habeas court to render a "summary dismissal without a trial" of all or part of a habeas petition if the court determines, either on motion by a party or sua sponte, that there is no good cause for trial. Kaddah v. Commissioner of Correction , supra, 324 Conn. at 568, 153 A.3d 1233. In order to establish "good cause for trial," the petitioner must "allege the existence of specific facts which, if proven, would entitle the petitioner to relief under applicable law ...." General Statutes § 52-470 (b) (3). Section 52-470 (b) (1) expressly requires that the habeas court's "good cause for trial" determination be made "[a]fter the close of all pleadings" in the proceeding. The plain language of the statute, accordingly, makes clear that prior to the close of all pleadings, a habeas court would lack discretion to take action on a respondent's motion-or to act sua sponte-to issue an order to show good cause for trial pursuant to § 52-470 (b) (1).
**718 This constraint on the court's discretion is consistent with the nature of the court's inquiry. In order to determine whether there is good cause for trial, the court must by necessity wade-albeit in a preliminary manner-into the merits of the petition. The determination of whether good cause exists turns on the ultimate question of whether the petitioner would be entitled to relief under applicable law. As a practical matter, because that inquiry is a substantive one, the question would be premature prior to the close of all pleadings. Addressing the question of whether good cause for trial exists on the basis of incomplete information would, in turn, be inconsistent with the requirement of § 52-470 (a) that the court "dispose of the case as law and justice require."
The procedures available for the "good cause for trial" inquiry confirm our conclusion that the court's threshold inquiry is substantive in nature. For example, § 52-470 (b) (2) contemplates that the parties may submit evidence to assist the court in making its determination, including, but not limited to "documentary evidence, affidavits and unsworn statements." Our conclusion is also consistent with the requirement that the petition and exhibits must "provide a factual basis upon which the court can conclude that evidence in support of the alleged facts exists and will be presented at trial ...." General Statutes § 52-470 (b) (3). Finally, if the petition and the exhibits do not establish such good cause, "the court shall hold a preliminary hearing to determine whether such good cause exists." General Statutes § 52-470 (b) (3). The preliminary hearing is one at which the court considers "any evidence or argument by the parties ...." General Statutes § 52-470 (b) (3). Essentially, § 52-470 (b) provides the habeas court with a means-short of holding a trial on the merits-to screen out meritless petitions in a manner that allows the petitioner every opportunity to meet the required **719 good cause showing. Unlike § 52-470 (b), § 52-470 (c), (d) and (e) together address whether the petitioner can establish good cause for a delay in filing a petition. Accordingly, because the respondent's motion in the present case did not challenge whether there was good cause for trial, but, instead, requested that the court address the timeliness of the petition, we conclude that the habeas court incorrectly *583 applied § 52-470 (b) to the respondent's motion.
We now consider the provisions that set forth the applicable procedures for addressing a delay in filing the petition. Subsections (c) and (d) of § 52-470 establish a "rebuttable presumption" of delay without good cause for petitions filed outside the time limits set forth therein.[3] Section 52-470 (d), which applies in the present **720 case, sets forth several different time limits, depending on the circumstances of the case, for filing a petition subsequent to a judgment on a prior petition challenging the same conviction. The relevant time limit for purposes of this appeal is set forth in § 52-470 (d) (1), which requires that a petitioner file a subsequent petition within two years of the final judgment on the prior petition. Because the petitioner in the present case filed his petition outside that time limit, the "rebuttable presumption" of delay without good cause applied to his petition.[4] See General Statutes § 52-470 (d) (1).
In § 52-470 (e), the legislature outlined the procedure by which the respondent may rely on the rebuttable presumption established by § 52-470 (c) and (d) that no good cause exists for a delay in filing the petition. Section 52-470 (e) provides in relevant part: "In a case in which the rebuttable presumption of delay under subsection (c) or (d) of this section applies, the court, upon the request of the respondent, shall issue an order to show cause why the petition should be permitted to proceed...." We begin with two observations about § 52-470 (e). First, in contrast to the court's inquiry as to whether good cause exists for trial, which the court may undertake either on its own motion or by the motion of any party;
*584 General Statutes § 52-470 (b) (1) ; the court's duty to inquire whether there is good cause for a delay is triggered only upon the request of the respondent. If the respondent makes such a request, the court "shall" issue an order to show cause.[5] Second, **721 and more important, nothing in the language of § 52-470 (e) expressly clarifies or limits the timing of that order. As opposed to the language of § 52-470 (b), which specifically and expressly requires that the court wait until after the close of all pleadings to address whether there is good cause for trial, § 52-470 (e) contains no such time limit. If the legislature had intended to incorporate a time constraint into § 52-470 (e), it could have done so. "We are not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) Connecticut Light & Power Co. v. Dept. of Public Utility Control , 266 Conn. 108, 119, 830 A.2d 1121 (2003) ; id. (refusing to read into Connecticut's utility statute language that would limit application of statute).
Notably, as compared to the procedures available under § 52-470 (b) to demonstrate that good cause exists for trial, § 52-470 (e) provides significantly less detail regarding the procedures by which a petitioner may rebut the presumption that there was no good cause for a delay in filing the petition. Specifically, § 52-470 (e) merely provides in relevant part that "[t]he petitioner or, if applicable, the petitioner's counsel, shall have a meaningful opportunity to investigate the basis for the delay and respond to the order. If, after such opportunity, the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. For the purposes of this **722 subsection, good cause includes, but is not limited to, the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection (c) or (d) of this section."
Nothing in subsection (e) expressly addresses whether the petitioner may present argument or evidence, or file exhibits, or whether and under what circumstances the court is required to hold a hearing, if the court should determine that doing so would assist it in making its determination. The only express procedural requirement is stated broadly. The court must provide the petitioner with a "meaningful opportunity" both to investigate the basis for the delay and to respond to the order to show cause. General Statutes § 52-470 (e). The phrase "meaningful opportunity" is not defined in the statute. That phrase typically refers, however, to the provision of an opportunity that comports with the requirements of due process. See, e.g., State v. Fay , 326 Conn. 742, 754 n.12, 167 A.3d 897 (2017) ("[w]hether rooted directly in the [d]ue [p]rocess *585 [c]lause of the [f]ourteenth [a]mendment or in the [c]ompulsory [p]rocess or [c]onfrontation [c]lauses of the [s]ixth [a]mendment, the [c]onstitution guarantees criminal defendants a meaningful opportunity to present a complete defense" [emphasis added; internal quotation marks omitted] ); State v. Harris , 277 Conn. 378, 380, 397, 890 A.2d 559 (2006) (trial court's admission into evidence of report by Psychiatric Security Review Board at continued commitment hearing did not deprive insanity acquittee of due process because he received "meaningful opportunity to be heard"); see also Mathews v. Eldridge , 424 U.S. 319, 348-49, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("The essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet **723 it.... All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard ... to [e]nsure that they are given a meaningful opportunity to present their case." [Citations omitted; emphasis added; internal quotation marks omitted.] ) The lack of specific statutory contours as to the required "meaningful opportunity" suggests that the legislature intended for the court to exercise its discretion in determining, considering the particular circumstances of the case, what procedures should be provided to the petitioner in order to provide him with a meaningful opportunity, consistent with the requirements of due process, to rebut the statutory presumption.
We envision that, in the majority of cases, the question of whether a petitioner has demonstrated good cause for delay will not require that the habeas court engage in an inquiry that is similar in scope to the one required for the screening of meritless petitions pursuant to § 52-470 (b). The absence of detailed procedural requirements in § 52-470 (e), as compared with those identified in § 52-470 (b), is consistent with that general expectation. In many cases, the habeas court will likely be able to resolve the question of whether there was good cause for delay soon after the respondent files a motion requesting an order to show cause. In some instances, however, the basis for a delay may be inextricably intertwined with the merits of the petition. Under such circumstances, the court will be required to engage in a more substantive inquiry, which will more closely resemble the type of inquiry contemplated under § 52-470 (b). Section 52-470 (e) expressly recognizes that possibility by stating "good cause" for delay may include "the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection **724 (c) or (d) of this section." (Emphasis added.) A classic example in which the basis for delay and the merits of the petition will be inextricably intertwined is when a petitioner has alleged that the state violated its duty to disclose exculpatory evidence under Brady v. Maryland , 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In such a case, the inquiry into the basis for delay and the merits of the petition are one and the same.[6] *586 In applying § 52-470 (a), this court has stated that a "habeas court must fashion a remedy appropriate to the constitutional right it seeks to vindicate." James L. v. Commissioner of Correction , 245 Conn. 132, 148, 712 A.2d 947 (1998). That same principle guides our interpretation of § 52-470 (e). In the absence of any language in that subsection cabining the discretion of the habeas court with respect to the timing of the issuance of an order to show cause for delay, we conclude that the legislature intended that the court exercise its discretion to do so when the court deems it appropriate given the circumstances of the case. This conclusion strikes the appropriate balance between the principles of expediency and due process. See General Statutes § 52-470 (a). Our conclusion that the habeas court is not required to wait until the close of all pleadings to issue an order to show cause why the petition should be permitted to proceed when there is a rebuttable presumption of delay is consistent with the purpose underlying P.A. 12-115-to screen out meritless and untimely petitions in an expeditious manner. See **725 Kaddah v. Commissioner of Correction , supra, 324 Conn. at 566-67, 153 A.3d 1233 (2012 amendments were "intended to supplement [ § 52-470's] efficacy in averting frivolous habeas petitions and appeals"). Our conclusion also protects the petitioner's right to due process by giving proper effect to the requirement in § 52-470 (e) that the habeas court provide the petitioner with a "meaningful opportunity" to rebut the presumption that he lacked good cause for the delay. As we have explained, in some instances, the provision of such "meaningful opportunity" will require the habeas court to determine whether, under the particular circumstances of the case, the basis for delay is intertwined with the merits of the petition.
Our statutory construction is also consistent with the bedrock principle that "[t]he trial court possesses inherent discretionary powers to control pleadings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial." (Internal quotation marks omitted.) Downs v. Trias , 306 Conn. 81, 102, 49 A.3d 180 (2012) ; see also Practice Book § 23-29 (3) ("[t]he judicial authority may, at any time ... [determine] that ... the petition presents the same ground as a prior petition previously denied and fails to state new facts or proffer new evidence not reasonably available at the time of the prior petition" [emphasis added] ); James L. v. Commissioner of Correction , supra, 245 Conn. at 143, 712 A.2d 947 ("Decisions concerning abuse of the writ are addressed to the sound discretion of the trial court .... [T]heirs must be the judgment as to whether a second or successive application shall be denied without consideration of the merits." [Internal quotation marks omitted.] ). Finally, we observe that the rules of practice expressly recognize the habeas court's discretion over scheduling. See Practice Book § 23-34 ("[t]he judicial authority may establish such additional procedures as it determines will aid in the fair and summary disposition of habeas corpus **726 petitions, including, but not limited to, scheduling orders").
The habeas court's exercise of its discretion to manage the case remains the best tool to guarantee that the case is disposed of "as law and justice require"; General Statutes § 52-470 (a) ; as the habeas judge is in the best position to balance the principles of judicial economy and due process. These concerns are particularly salient for writs of habeas corpus, the principal purpose of which is "to serve as a bulwark against convictions that violate fundamental fairness." (Internal quotation *587 marks omitted.) Lozada v. Warden , 223 Conn. 834, 840, 613 A.2d 818 (1992). In the present case, the habeas court's decision to take no action on the respondent's motion was predicated on its mistaken belief that it lacked discretion to act. It is well established that when a court has discretion, it is improper for the court to fail to exercise it. See, e.g., State v. Lee , 229 Conn. 60, 73-74, 640 A.2d 553 (1994) ("[i]n the discretionary realm, it is improper for the trial court to fail to exercise its discretion").
The decision of the habeas court is reversed and the case is remanded to that court for further proceedings consistent with this opinion.
In this opinion the other justices concurred.

This court has construed § 52-265a to allow the Chief Justice to certify an appeal in matters of public importance even if the order challenged is not a final judgment. See, e.g., State v. Elias G. , 302 Conn. 39, 40 n.1, 23 A.3d 718 (2011) ; Laurel Park, Inc. v. Pac , 194 Conn. 677, 678-79 n.1, 485 A.2d 1272 (1984).

In that case, this court construed General Statutes § 5897, a predecessor to § 52-470 (a). Hogewoning v. Hogewoning , supra, 117 Conn. at 265, 167 A. 813.

General Statutes § 52-470 provides in relevant part: "(c) Except as provided in subsection (d) of this section, there shall be a rebuttable presumption that the filing of a petition challenging a judgment of conviction has been delayed without good cause if such petition is filed after the later of the following: (1) Five years after the date on which the judgment of conviction is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) October 1, 2017; or (3) two years after the date on which the constitutional or statutory right asserted in the petition was initially recognized and made retroactive pursuant to a decision of the Supreme Court or Appellate Court of this state or the Supreme Court of the United States or by the enactment of any public or special act. The time periods set forth in this subsection shall not be tolled during the pendency of any other petition challenging the same conviction.
"(d) In the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after the later of the following: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) October 1, 2014; or (3) two years after the date on which the constitutional or statutory right asserted in the petition was initially recognized and made retroactive pursuant to a decision of the Supreme Court or Appellate Court of this state or the Supreme Court of the United States or by the enactment of any public or special act. For the purposes of this section, the withdrawal of a prior petition challenging the same conviction shall not constitute a judgment. The time periods set forth in this subsection shall not be tolled during the pendency of any other petition challenging the same conviction. Nothing in this subsection shall create or enlarge the right of the petitioner to file a subsequent petition under applicable law...."

General Statutes § 52-470 (f), which creates an exception to subsections (c) through (e) for petitioners "asserting actual innocence ... challeng[ing] the conditions of confinement," or challenging capital convictions resulting in a death sentence, is not at issue in this appeal.

The respondent contends that the language of § 52-470 (e) requires the habeas court to issue the show cause order immediately upon the respondent's request. Specifically, the respondent relies on the provision of that subsection that "the court, upon the request of the respondent, shall issue an order to show cause ...." (Emphasis added.) General Statutes § 52-470 (e). The respondent argues that the word "shall" creates a mandatory, temporal restraint on the court's power to act on the respondent's motion. As we already have explained, however, nothing in the text of § 52-470 (e) refers to any time limit on the habeas court's authority to act on a motion requesting an order to show cause when there has been a delay-the respondent does not point to any language that expressly defines a time constraint on the court's power to act. The reasonable reading of the statutory language is that it merely clarifies that if the respondent requests that the habeas court address the issue of untimeliness, the court must do so. Nothing in the statute, however, requires that the court do so immediately.

The respondent presumes that, in keeping "presumptively untimely petitions pending," the habeas court would let cases sit for years. We disagree. Accompanying the habeas court's enjoyment of discretion, however, is its responsibility to exercise that discretion appropriately. The statute requires that the habeas court ensure that the action proceed "in a summary way ...." General Statutes § 52-470 (a). We are confident that the habeas court would exercise its discretion in a manner consistent with the statutory mandate.