******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JEFFREY STENNER *v.* COMMISSIONER
OF CORRECTION
(AC 42852)

ROFIO GREENFIELD *v.* COMMISSIONER
OF CORRECTION
(AC 43779)

Prescott, Cradle and Clark, Js.

*Syllabus*

The petitioners, S and G, both of whom had been convicted of murder, each
filed a successive habeas petition. Following a hearing to show cause
in each case, the habeas courts dismissed the petitions on the ground
that the petitioners filed them outside of the two year time limit for
successive petitions set forth by statute (§ 52-470 (d) and (e)) without
establishing good cause for their respective untimely filings. In S's case,
the habeas court rejected S's reliance on the fact that, several days
before his filing deadline, he sent an inquiry to the Division of Public
Defender Services seeking review of his case. In G's case, the habeas
court rejected G's argument that he was unaware of the two year limita-
tion set forth in § 52-470 (d). Specifically, G argued that the legislature
had enacted the amendment to § 52-470 (P.A. 12-115) establishing the
rebuttable presumption of unreasonable delay for habeas petitions filed
outside the two year limitation after the appeal of his prior habeas
petition had concluded, and his appellate counsel in that case, D, failed
to advise him of P.A. 12-115. On the granting of certification, the petition-
ers filed separate appeals to this court. *Held*:

1. The habeas court did not abuse its discretion in determining that S failed
to demonstrate good cause for the delay in filing his successive habeas
petition: although S attributed the delay in filing his petition to the time
needed by the public defender to investigate his case, S waited until
three days before the deadline for filing his successive petition to send
his inquiry, nothing in the record demonstrated that S could not have
contacted the public defender sooner or filed his own petition before
the deadline, and, even if the delay could be attributed to the public
defender, a petitioner must demonstrate that something outside of his
or his counsel's control contributed to the delay; moreover, contrary to
S's argument, his general inquiry with the public defender prior to the
filing deadline was insufficient to establish good cause under § 52-470
(d), which expressly requires the filing of the successive petition before
the deadline; furthermore, to the extent S argued that good cause existed
under § 52-470 (e) because his claims were based on newly discovered
evidence not reasonably available to him regarding the undue consider-
ation given to his codefendants in exchange for testifying against S, it
was undisputed that the allegedly new evidence, which consisted of
court records and transcripts from his codefendants' dispositions, was
available prior to the conclusion of his first habeas proceeding, and the
record supported the habeas court's finding that S was aware of the
relevant facts and circumstances that implicated the records at issue
when he filed an earlier habeas petition; accordingly, S did not demon-
strate that this evidence could not have been discovered and obtained
before the filing deadline by the exercise of due diligence or that this
evidence would have materially affected the merits of his case.

2. The habeas court did not abuse its discretion in determining that G failed
to demonstrate good cause for the delay in filing his successive habeas
petition: notwithstanding G's argument that he established good cause
for his untimely filing because he was unaware of the two year filing
deadline, G presented no evidence to demonstrate how his delay in
filing his successive petition involved something outside of his or his
counsel's control, as the habeas court found that neither D's nor G's
affidavit conclusively established, without corroborating evidence, that
D failed to advise G of the two year limitation, and those determinations
were not clearly erroneous; moreover, although a petitioner's lack of
knowledge of a change in the law is relevant to establishing good cause

for an untimely filing, on the facts of the present case, G's lack of knowledge of P.A. 12-115, and D's alleged failure to notify him of P.A. 12-115, were insufficient to demonstrate that the habeas court abused its discretion in finding that good cause did not exist for the untimely filing, especially when G did not argue that his ignorance of the law was attributable to his conditions of confinement or other extenuating circumstances pertaining to his incarceration.

Argued September 8—officially released November 22, 2022

*Procedural History*

Amended petition, in each case, for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where, in the first case, the court, *Newson, J.*, rendered judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to this court; thereafter, in the second case, the court, *Chaplin, J.*, rendered judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Vishal K. Garg*, assigned counsel, for the appellant in Docket No. AC 42852 (petitioner).

*Robert O'Brien*, assigned counsel, with whom, on the brief, were *Owen Firestone* and *Christopher Y. Duby*, assigned counsel, for the appellant in Docket No. AC 43779 (petitioner).

*Sarah Hanna*, senior assistant state's attorney, with whom, on the brief, were *Brian W. Preleski*, former state's attorney, *Leah Hawley*, former senior assistant state's attorney, and *Tamara A. Grosso*, former assistant state's attorney, for the appellee in Docket No. AC 42852 (respondent).

*Sarah Hanna*, senior assistant state's attorney, with whom, on the brief, were *Patrick Griffin*, chief state's attorney, and *Adrienne Russo*, assistant state's attorney, for the appellee in Docket No. AC 43779 (respondent).

*Opinion*

CLARK, J. The petitioners, Jeffrey Stenner and Rofio Greenfield, appeal following the granting of their petitions for certification to appeal from the habeas courts' dismissals of their respective petitions for a writ of habeas corpus.[1] On appeal, the petitioners claim that the habeas courts erred in concluding that the petitioners failed to establish "good cause" pursuant to General Statutes § 52-470 (d) and (e) to overcome the rebuttable presumption of unreasonable delay stemming from the untimely filing of their respective habeas petitions. We disagree and, accordingly, affirm the judgments of the habeas courts.[2]

We begin our discussion by setting forth the applicable standard of review and legal principles that govern these appeals. "[A] habeas court's determination of whether a petitioner has satisfied the good cause standard under § 52-470 (d) and (e) is reviewed on appeal for abuse of discretion." *Kelsey* v. *Commissioner of Correction*, 343 Conn. 424, 432, 274 A.3d 85 (2022).[3] "Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Internal quotation marks omitted.) Id., 440.

Section 52-470 (d) provides in relevant part: "In the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after the later of the following: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) October 1, 2014; or (3) two years after the date on which the constitutional or statutory right asserted in the petition was initially recognized and made retroactive pursuant to a decision of the Supreme Court or Appellate Court of this state or the Supreme Court of the United States or by the enactment of any public or special act. . . ." Section 52-470 (e) provides in relevant part that, "[i]f . . . the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. . . ."

In order for a petitioner to establish "good cause" sufficient to rebut the presumption of unreasonable delay under § 52-470 (d), "a petitioner generally will be required to demonstrate that something outside of the control of the petitioner or habeas counsel caused or contributed to the delay." (Internal quotation marks omitted.) *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 442. In determining whether a petitioner has

satisfied the "good cause" requirement, our courts may look to several nonexhaustive factors. They include "(1) whether external forces outside the control of the petitioner had any bearing on the delay; (2) whether and to what extent the petitioner or his counsel bears any personal responsibility for any excuse proffered for the untimely filing; (3) whether the reasons proffered by the petitioner in support of a finding of good cause are credible and are supported by evidence in the record; and (4) how long after the expiration of the filing deadline did the petitioner file the petition." (Internal quotation marks omitted.) *Coney* v. *Commissioner of Correction*, 215 Conn. App. 99, 108, 281 A.3d 461 (2022), quoting *Kelsey* v. *Commissioner of Correction*, supra, 442. A habeas court "may also include in its good cause analysis whether a petition is wholly frivolous on its face," as "[i]t is consistent with the legislative intent of § 52-470 that the good cause determination can be, in part, guided by the merits of the petition." *Kelsey* v. *Commissioner of Correction*, supra, 444 n.9. "No single factor necessarily will be dispositive, and the court should evaluate all relevant factors in light of the totality of the facts and circumstances presented." (Internal quotation marks omitted.) Id., 438. With these legal principles in mind, we turn to our application of them to the facts of the petitioners' individual appeals.

## I

## JEFFREY STENNER

In 2003, Jeffrey Stenner was convicted of murder and later sentenced to sixty years of incarceration. See *State* v. *Stenner*, 281 Conn. 742, 745 and n.4, 917 A.2d 28, cert. denied, 552 U.S. 883, 128 S. Ct. 290, 169 L. Ed. 2d 139 (2007). He appealed to our Supreme Court, which affirmed his conviction. Id., 767.

On July 27, 2006, Stenner filed his first petition for a writ of habeas corpus, which was denied by the habeas court following a trial. *Stenner* v. *Warden*, Docket No. CV-06-4001209, 2011 WL 6270076, *8 (Conn. Super. November 22, 2011). Stenner appealed to this court, which dismissed the appeal. *Stenner* v. *Commissioner of Correction*, 144 Conn. App. 371, 372–73, 71 A.3d 693, cert. denied, 310 Conn. 918, 76 A.3d 633 (2013). Stenner then filed a petition for certification for appeal with our Supreme Court, which was denied on October 2, 2013. *Stenner* v. *Commissioner of Correction*, 310 Conn. 918, 76 A.3d 633 (2013).

On March 16, 2017, approximately three and one-half years after the conclusion of appellate review of his prior habeas action, Stenner filed the instant petition for a writ of habeas corpus, which asserted six claims. On March 22, 2017, the respondent, the Commissioner of Correction, filed a request for an order to show cause, arguing that Stenner's petition should be dismissed pursuant to § 52-470 (d) because it was not filed within

two years of our Supreme Court's decision denying certification for review of the denial of his first habeas petition. Stenner filed an objection to that request. On June 1, 2017, the habeas court denied the respondent's request for an order to show cause, concluding that it was premature because the pleadings had yet to close.[4]

On July 11, 2018, Stenner filed an amended petition, which added a constitutional confrontation claim and removed the actual innocence claim that he initially brought. On November 6, 2018, the respondent reclaimed his original motion for an order to show cause, and a hearing was held on December 10, 2018.

By memorandum of decision dated January 29, 2019, the habeas court dismissed Stenner's petition, concluding that, pursuant to § 52-470, Stenner's filing delay "was without good cause." In reaching that conclusion, the habeas court explained that "the final judgment on [Stenner's] case would have been when his petition for certification to [our] Supreme Court was denied on October 2, 2013." Therefore, in accordance with § 52-470 (d) (1), "any subsequent petition should have . . . been filed [no] later than October 2, 2015." In determining whether good cause existed, the habeas court found that, "[o]n approximately October 2, 2015, the Division of Public Defender Services Post Conviction Unit/Innocence Project (hereinafter, 'Innocence Project') received a standard inquiry from [Stenner] by way of a form they maintain on their website.[5] Upon reviewing the information submitted by [Stenner], Ian Dodds, Innocence Project case analyst, sent [Stenner] back a more detailed questionnaire asking for additional information, which he testified was returned in a timely manner, although no date was given. Immediately upon reviewing the information returned by [Stenner] . . . Dodds indicated it was apparent that the Innocence Project had a conflict of interest, because an attorney who formerly represented one of [Stenner's] codefendants was now employed as an Innocence Project staff attorney. On January 8, 2016, he elevated the case to Attorney Darcy McGraw, Director of the Innocence Project, notifying her of the conflict of interest. . . . McGraw testified that she sought approval from the Office of the Chief Public Defender for permission to assign the file to outside counsel for investigation. While no testimony was provided as to what occurred in the interim . . . McGraw received approval to assign the matter to outside counsel on May 19, 2016, at which time notification of assignment was forwarded to the Kirschbaum Law Firm. Following an investigation of the facts and circumstances of [Stenner's] case, the Kirschbaum Law Firm filed the petition commencing the present [case]." (Footnote in original.)

In addressing whether there was good cause for Stenner's untimely filing, the habeas court observed that Stenner "argues generally that the fact that he sought

review of his matter by filing an inquiry with the Innocence Project should constitute 'good cause' for the delay in filing. [Stenner] claims that the assistance of counsel was necessary to uncover new evidence that could not have otherwise been discovered by [him] in the exercise of due diligence when he was self-represented. Specifically, [Stenner] asserts that the information necessary to support his claim that the state improperly withheld or misrepresented the benefits given to codefendants . . . could not have been discovered without counsel." The habeas court rejected Stenner's arguments, concluding that "the delay was without 'good cause,' because the record reveals that, not only was the information regarding the codefendants' actual plea deals with the state discoverable by the exercise of due diligence through court records available as far back as 2004, [Stenner] actually possessed the information not later than August 12, 2011. Since [Stenner] was fully aware, at a minimum, of how to commence a habeas action and get counsel appointed to represent his interests [as evidenced by the filing of his first petition], his delay in waiting until just days before the two year period ran to reach out to counsel was also without good cause.[6] That delay, resulted in prohibiting any counsel from beginning an investigation into the circumstances of [Stenner's] case until on or after the two year window expired on October 2, 2015. . . . This delay, which was . . . without good cause and solely within [Stenner's] control, made it impossible for counsel to file a petition within the statutory period." (Citation omitted; footnote added.) Accordingly, the habeas court dismissed Stenner's petition. This appeal followed.

On appeal, Stenner argues that he established good cause for his late filing because he demonstrated that he contacted the Innocence Project prior to the expiration of the two year period. In his view, both the Innocence Project and outside counsel were the cause of the delay because they needed time to investigate his claims prior to filing a habeas petition on his behalf. We disagree. Although Stenner attributes the delay in filing to the Innocence Project and to outside counsel, it was Stenner who waited until three days prior to the deadline to send a general inquiry to the Innocence Project. There is nothing in the record demonstrating that Stenner could not have contacted the Innocence Project sooner or filed his own petition prior to the deadline. Moreover, even if any delay can be attributed to the Innocence Project or to outside counsel, in order to establish good cause to rebut the presumption of unreasonable delay, "a petitioner generally will be required to demonstrate that something outside of the control of the petitioner *or habeas counsel* caused or contributed to the delay." (Emphasis added; internal quotation marks omitted.) *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 442.

In a similar vein, Stenner argues that good cause existed simply because he submitted a general inquiry to the Innocence Project before the expiration of the deadline. Section 52-470 (d), however, does not speak in terms of sending a general inquiry to prospective counsel prior to the relevant deadline; it requires that a petition be *filed* by the pertinent deadline. See General Statutes § 52-470 (d) ("there shall be a rebuttable presumption that the *filing* of the subsequent petition has been delayed without good cause if such petition is *filed* after the later of the following: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review" (emphasis added)). To adopt Stenner's argument essentially would render the time limitation in the statute a nullity by allowing petitioners to unilaterally extend their filing deadline simply by exploring potential representation on the eve of the deadline. This would undermine the law's purpose of screening out meritless and untimely petitions in an expeditious manner. See *Kelsey* v. *Commissioner of Correction*, 329 Conn. 711, 724, 189 A.3d 578 (2018) ("[o]ur conclusion . . . is consistent with the purpose underlying [Public Acts 2012, No. 12-115, § 1 (P.A. 12-115)]—to screen out meritless and untimely petitions in an expeditious manner").

Finally, § 52-470 (e) provides in relevant part: "[g]ood cause includes, but is not limited to, the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection (c) or (d) of this section." Stenner contends that he established good cause for his late filing because the claims in his petition were based on newly discovered evidence not reasonably available to him. We disagree.

Stenner's operative petition centers on allegations that the state improperly withheld or misrepresented the substance of the consideration that was going to be given to his codefendants in exchange for testifying against him at his trial. He suggests that these claims are supported by records and transcripts from 2003 and 2004 from his codefendants' dispositions, which were obtained by Attorney Michael Brown, an attorney at the Kirschbaum Law Group assigned to Stenner's case, while he was investigating Stenner's case prior to filing the instant habeas action. In Stenner's view, this evidence is "new evidence" sufficient to constitute good cause under the statute because he speculates that he could not have obtained those court records and transcripts himself between the conclusion of appellate review of his prior habeas corpus proceeding and the deadline to file his next petition because he was not involved in pending litigation in order to avail himself

of a fee waiver to obtain those records. We are not persuaded.

First, it is undisputed that the records and transcripts that Stenner now claims are "new evidence" were available in or around 2004, many years prior to the conclusion of his first habeas proceeding. Second, the record fully supports the habeas court's finding that Stenner was aware of the relevant facts and circumstances that implicate these records at least as far back as 2011, as evidenced by a prior claim he brought in an earlier habeas petition. Indeed, in a prior petition, Stenner alleged that the state failed to disclose impeachment evidence by failing to disclose that the codefendants' cases were being resolved favorably in exchange for testimony against him. See *Stenner* v. *Warden*, supra, 2011 WL 6270076, *3 and n.2. Although Stenner argues that these court records were not reasonably discoverable to him because he was not involved in pending litigation after the conclusion of appellate review of his prior habeas corpus action, which he claims is the only way he could avail himself of a fee waiver to obtain the records, this contention is not supported by anything in the record. Stenner did not offer any evidence that he, in fact, tried to obtain these court records but was unsuccessful. This claim also ignores the fact that Stenner could have filed his own petition—as he had done previously—prior to the filing deadline, which would have resulted in meeting the statutory deadline and the appointment of counsel. Importantly, as previously discussed in this opinion, he also could have contacted the Innocence Project or other counsel earlier than he did. Simply put, the record reflects that Stenner in fact had this information as early as 2011. Stenner did not sufficiently demonstrate that this evidence could not have been discovered and obtained before the filing deadline by the exercise of due diligence. Last, even if he had demonstrated that this evidence could not have been discovered by the exercise of due diligence in time to meet the deadline, Stenner produced no evidence that this "new evidence" would have materially affected the merits of his case, as § 52-470 (e) requires.

On the basis of our review of the record in this case and guided by the relevant factors set forth in *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 439, we conclude that the habeas court did not abuse its discretion in determining that Stenner failed to demonstrate good cause for the delay in filing his second petition for a writ of habeas corpus.

II

ROFIO GREENFIELD

In 1990, a jury found Rofio Greenfield guilty of murder in violation of General Statutes § 53a-54a (a). *State* v. *Greenfield*, 228 Conn. 62, 63–64, 634 A.2d 879 (1993).

He was sentenced to a term of imprisonment of forty-five years. Id., 64. Greenfield's conviction was affirmed by our Supreme Court in 1993. Id.

Following his conviction, Greenfield filed a host of habeas actions. Relevant to this appeal, Greenfield filed his fourth habeas action in 2005. The petitioner amended this petition in 2009, claiming ineffective assistance of counsel and actual innocence. See *Greenfield* v. *Warden*, Docket No. CV-05-4000636, 2010 WL 936894, *1 (Conn. Super. February 9, 2010). On February 9, 2010, the habeas court dismissed Greenfield's amended petition as to his claims of ineffective assistance of counsel on the basis that they were successive. Id., *3. On June 3, 2010, the habeas court dismissed Greenfield's claim of actual innocence on the basis that he failed to establish a prima face claim. *Greenfield* v. *Warden*, Docket No. CV-05-4000636, 2010 WL 2817259, *1 (Conn. Super. June 3, 2010). Greenfield appealed to this court, which dismissed his appeal; *Greenfield* v. *Commissioner of Correction*, 133 Conn. App. 904, 34 A.3d 481 (2012); and our Supreme Court denied certification for appeal on March 7, 2012. *Greenfield* v. *Commissioner of Correction*, 304 Conn. 906, 38 A.3d 1201 (2012).

In June, 2012, approximately three months after the completion of Greenfield's appeal in his fourth habeas action, the legislature amended § 52-470. See P.A. 12-115. The amendments to § 52-470, which took effect on October 1, 2012, set filing deadlines for petitions for a writ of habeas corpus and require courts to dismiss petitions in cases in which a petitioner has not demonstrated good cause for a delay in filing his or her petition. See General Statutes § 52-470 (e) ("[i]f . . . the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition").

On May 9, 2016, Greenfield initiated the instant habeas action. On July 30, 2019, and then again on August 1, 2019, Greenfield filed an amended petition alleging a violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), a due process violation based on the state's knowing presentation of false testimony, and ineffective assistance of his three prior habeas counsel and trial counsel.

On July 30, 2019, pursuant to § 52-470 (e), the respondent filed a request for an order to show cause for Greenfield's delay in filing his habeas petition. In his request, citing § 52-470 (d), the respondent claimed that Greenfield's petition was untimely and that, in order to proceed, he was required to show good cause for his delay in filing.

On September 20, 2019, the habeas court, *Chaplin, J.*, held a show cause hearing. Greenfield submitted an affidavit sworn to by himself with numerous documents

appended to it and an affidavit sworn to by Attorney Mark Diamond, the attorney who represented Greenfield on appeal from his fourth habeas action. On the basis of this evidence, Greenfield argued, inter alia, that he established good cause because his habeas counsel and habeas appellate counsel failed to keep him apprised of the status of his case and to inform him of the new filing deadlines set forth in § 52-470. Greenfield argued and attested that, if he had known about the new law, he would have filed his petition sooner.

By memorandum of decision dated October 17, 2019, the habeas court found that "the current petition was filed more than four years after the dismissal of [Greenfield's] prior habeas corpus petition was deemed to be a final judgment due to the conclusion of appellate review." The habeas court found "Diamond's affidavit . . . inconclusive for the purpose of determining whether . . . Diamond failed to advise [Greenfield] of the statute of limitations that had not yet become the law when [our] Supreme Court denied [Greenfield's] petition for certification to appeal his prior habeas petition. Furthermore, this court does not find [Greenfield's] affidavit . . . persuasive as to prior appellate habeas counsel's failure to advise him of § 52-470 (d). Even if the court did find his affidavit persuasive on that point, [Greenfield's] affidavit is insufficient without corroborative evidence, of prior appellate habeas counsel's failure to advise [Greenfield] of § 52-470 (d), to demonstrate good cause for filing the current petition beyond the applicable statute of limitations. . . . Therefore, the court finds that [Greenfield] has failed to make a showing of good cause for filing the current petition more than two years after March 7, 2012; or after October 1, 2014." (Citation omitted.) The habeas court accordingly dismissed Greenfield's petition. This appeal followed.

As an initial matter, Greenfield does not dispute that his fifth petition was presumptively untimely. Under § 52-470 (d), Greenfield had until October 1, 2014, to file the instant habeas petition.[7] He did not file his petition until May 9, 2016.

With respect to whether Greenfield established good cause for this untimely filing, the habeas court found that Diamond's affidavit was inconclusive for purposes of determining whether Diamond failed to advise Greenfield of the statute of limitations that had not yet become the law when our Supreme Court denied Greenfield's petition for certification to appeal his prior habeas petition. Furthermore, the court found Greenfield's affidavit unpersuasive as to prior appellate habeas counsel's failure to advise him of § 52-470 (d), especially without any corroborative evidence. Although Greenfield takes exception to the court's findings as to the evidence he introduced, we disagree with him that those determinations were clearly erroneous. See *State* v. *Garcia*, 299

Conn. 39, 54, 7 A.3d 355 (2010) ([b]ecause it is the trial court's function to weigh the evidence and [to] determine credibility, we give great deference to its findings" (internal quotation marks omitted)).

Moreover, the habeas court ultimately concluded that, even if it had found that Greenfield's affidavit was persuasive, there still was no good cause for his untimely filing. We conclude that the habeas court did not abuse its discretion in making this determination.

Greenfield argues that he established good cause by proving that he was unaware of the deadline and that the delay in filing was not caused by him but by his prior counsel's failure to inform him that P.A. 12-115 had been enacted and would become effective on October 1, 2012. In support of this argument, he argues that his appellate counsel for his fourth petition, Diamond, sent him a letter on March 13, 2012, informing him that the Supreme Court denied his petition for certification and that Diamond would no longer be representing him. In his view, because Diamond did not include information in that letter informing him that there was pending legislation at that time that could, if eventually passed, affect his appeal timeline, there was good cause for his late filing. Greenfield also contends that he received a letter from Diamond on September 25, 2012, that contained transcripts from his case. He argues that this letter demonstrates that a relationship with his counsel was still ongoing, and that counsel had an obligation in that correspondence to alert Greenfield about the passage of P.A. 12-115. Greenfield contends that, because counsel did not provide him with this information at any time, any delay cannot be attributed to him. We are not persuaded.

Recently, in *Kelsey*, a petitioner argued that, "in addition to his prior habeas counsel's failure to inform him of any statutory filing deadlines, his status as a self-represented party when he filed this petition caused the delay in filing insofar as his conditions of confinement had caused him to be unaware of the deadline set by the 2012 amendments to § 52-470." *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 441. In reaching its conclusion that the petitioner failed to demonstrate good cause, our Supreme Court explained that, "although . . . the legislature certainly contemplated a petitioner's lack of knowledge of a change in the law as potentially sufficient to establish good cause for an untimely filing, the legislature did not intend for a petitioner's lack of knowledge of the law, standing alone, to establish that a petitioner has met his evidentiary burden of establishing good cause. As with any excuse for a delay in filing, the ultimate determination is subject to the same factors previously discussed, relevant to the petitioner's lack of knowledge: whether external forces outside the control of the petitioner had any bearing on his lack of knowledge, and whether and to

what extent the petitioner or his counsel bears any personal responsibility for that lack of knowledge." (Footnote omitted.) Id., 444–45. The court explained that, "although the petitioner's lack of knowledge of the statutory amendments apparently attributable to his conditions of confinement could have certainly been considered in the habeas court's good cause determination," the record was clear that "the petitioner had access to a resource center that included the General Statutes" when he was out of administrative segregation in the ten months leading up to the filing deadline. Id., 445–46. The court consequently affirmed this court's judgment dismissing the petitioner's habeas petition. Id., 447.

Following our Supreme Court's decision in *Kelsey*, this court has addressed similar claims to the ones made in *Kelsey* and in this appeal. For example, in *Michael G.* v. *Commissioner of Correction*, 214 Conn. App. 358, 369, 280 A.3d 501 (2022), a petitioner argued that he established good cause for his untimely filing because his second habeas counsel failed to explain to him the statutory time limits in § 52-470 and incorrectly advised him to withdraw his prior petition and to refile it outside of the two year statutory deadline. Guided by the *Kelsey* factors, this court explained that, "[e]ven if we were to assume . . . that neither the petitioner nor his habeas counsel was aware of the time limits, the petitioner still cannot demonstrate that the habeas court abused its discretion in determining that the erroneous advice the petitioner received did not establish good cause for the delay in filing the third petition" because there were "no external factors at play and the petitioner and his habeas counsel together exclusively bear responsibility for the delay in filing the petition." (Footnote omitted.) Id., 370.

Similarly, in *Coney* v. *Commissioner of Correction*, supra, 215 Conn. App. 110, the petitioner argued that his prior habeas counsel's advice to withdraw his third petition, despite the fact that the statutory deadline had passed, constituted good cause for the delay in filing. He also argued that his ignorance of the law, his counsel's ignorance of the law, and the unavailability of an important witness, excused his untimely fourth petition. Id., 110. In rejecting the petitioner's arguments, this court explained that "there are no external factors at play and the petitioner and his prior habeas counsel together exclusively bear responsibility for the delay in filing." Id., 111. "[T]he 'cause' of the delay was not 'something outside of the control of the petitioner or habeas counsel' as required under [*Kelsey*'s] definition of good cause . . . .' " Id.

The same is true in this case. Greenfield's lack of knowledge of the change in the law and his counsel's alleged failure to notify him of the changes, on the facts of this case, are insufficient to demonstrate that the

habeas court abused its discretion in finding that good cause did not exist for the untimely filing. See *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 444 ("the legislature did not intend for a petitioner's lack of knowledge of the law, standing alone, to establish that a petitioner has met his evidentiary burden of establishing good cause"). During oral argument before this court, Greenfield's counsel confirmed that Greenfield was not arguing that his ignorance of the law was attributable to his conditions of confinement or other extenuating circumstances pertaining to his incarceration. Indeed, Greenfield presented no evidence to the habeas court to demonstrate how his one year and seven months delay in filing his habeas petition involved "something outside of the control of the petitioner or habeas counsel . . . ." Id., 442. We conclude, therefore, that the habeas court did not abuse its discretion in determining that Greenfield had failed to demonstrate good cause for the delay in filing his fifth habeas petition.[8]

The judgments are affirmed.

In this opinion the other judges concurred.

[1] Although these appeals have not been consolidated, we resolve both appeals in one opinion for purposes of judicial economy, as the claims involved in each are similar.

[2] We note that, following the submission of the parties' appellate briefs but prior to oral arguments, our Supreme Court granted certification in *Kelsey* v. *Commissioner of Correction*, 202 Conn. App. 21, 244 A.3d 171 (2020), aff'd, 343 Conn. 424, 274 A.3d 85 (2022), which involved substantially similar claims to the ones at issue in these appeals. Specifically, our Supreme Court granted certification to decide the appropriate standard of review for dismissal of habeas petitions pursuant to § 52-470 and whether this court correctly determined that the petitioner in that case failed to establish good cause necessary to overcome the rebuttable presumption of unreasonable delay as set forth in § 52-470. See *Kelsey* v. *Commissioner of Correction*, 336 Conn. 912, 244 A.3d 562 (2021). In light of our Supreme Court's grant of certification, this court ordered, sua sponte, that the parties notify this court as to whether consideration of their appeals should be stayed pending our Supreme Court's final disposition in *Kelsey* v. *Commissioner of Correction*, petition for cert. filed (Conn. February 3, 2021)(No. 20553). After receiving the parties' responses, this court stayed the appeals pending final disposition in that case. On June 14, 2022, this court lifted the stay and ordered the parties to submit simultaneous supplemental briefs addressing the impact of *Kelsey* v. *Commissioner of Correction*, 343 Conn. 424, 274 A.3d 85 (2022), on the pending cases. The parties in both cases filed supplemental briefs and presented oral arguments to this court on September 8, 2022.

[3] In their initial appellate briefs, both petitioners argued that our review of their claims was plenary. As noted, however, our Supreme Court subsequently held in *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 439–40, that the proper standard of review of these claims is for abuse of discretion.

[4] Following the habeas court's ruling, our Supreme Court clarified that it is in the discretion of a habeas court to act on the respondent's motion for an order to show cause prior to the close of the pleadings. See *Kelsey* v. *Commissioner of Correction*, 329 Conn. 711, 724, 189 A.3d 578 (2018) ("[i]n the absence of any language in [§ 52-470 (e)] cabining the discretion of the habeas court with respect to the timing of the issuance of an order to show cause for delay, we conclude that the legislature intended that the court exercise its discretion to do so when the court deems it appropriate given the circumstances of the case").

[5] "In addition to basic personal information, the form asks only three questions. The first asks for the crimes the person was convicted of, the second asks for their parole eligibility date, and the third asks the following

question: 'Summarize new evidence that has become available or that can be developed that could prove your factual innocence. This should include any new scientific evidence that can be considered.' "

[6] The record reflects that the Innocence Project received Stenner's general inquiry on September 29, 2015; however, Dodds, who was assigned to Stenner's case, did not receive the inquiry until October 2, 2015.

[7] In its request for an order to show cause filed with the habeas court, the respondent claimed initially that Greenfield was required to file the instant petition by March 7, 2014, in order for it to be timely filed. Although March 7, 2014, would have been two years from the conclusion of his prior habeas action, under § 52-470 (d), Greenfield had until October 1, 2014, to file the instant habeas action. See General Statutes § 52-470 (d) ("there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed *after the later of the following*: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) October 1, 2014" (emphasis added)). Neither party disputes at this juncture that the operative deadline to file the instant habeas petition was October 1, 2014.

[8] In their supplemental briefing, both petitioners argue that, because the habeas courts did not have the guidance of *Kelsey* when considering whether there was good cause for the delay in the filings, these cases should be remanded for further proceedings. This court, in addressing the same exact argument in a similar case to the present cases, recently held that "this argument has no merit." *Coney* v. *Commissioner of Correction*, supra, 215 Conn. App. 112 n.13. Moreover, we note that our Supreme Court in *Kelsey* did not remand that case to the habeas court for further proceedings. It instead affirmed this court's judgment, concluding "that the habeas court did not abuse its discretion in determining that the petitioner had failed to demonstrate good cause for the delay in filing the second habeas petition . . . ." *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 447. Although we do not foreclose the possibility that there could be an instance, albeit rare, in which a remand instructing a habeas court to apply *Kelsey* would be appropriate, we are not persuaded that one is required in either of these cases because neither petitioner has pointed to anything in *Kelsey* that would have required the habeas court in his case to have undertaken a different analysis with respect to the claims he raised before the habeas court. We therefore decline the petitioners' invitations to remand these cases for further proceedings.

————————————————